MARILYN C. AVERY *vs.* SANDRA C. STEELE
(and a companion case[1]).

Suffolk. November 2, 1992. - March 3, 1993.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & GREANEY, JJ.

*Practice, Civil*, Appeal, Frivolous action, Costs. *Attorney at Law*, Assessment of costs.

Double costs under Mass. R. A. P. 25 and G. L. c. 211, § 10, were imposed on the attorney of a party whose appeal in a dispute concerning the rent-control status of an apartment was frivolous, where inappropriate material in the form of misrepresentation of the holding of the trial court and misstatement of the opposing party's principal position was included in an appellate brief prepared and signed by the attorney. [455-457]

CIVIL ACTION commenced in the City of Boston Division of the Housing Court Department on July 1, 1987.

The case was heard by *Patrick J. King*, J., and a motion for a new trial was heard by him.

SUMMARY PROCESS. Complaint filed in the Boston Division of the Housing Court Department on March 20, 1989.

Motions to vacate a default judgment, for reconsideration, and to dismiss an appeal and to set an appeals bond were heard by *E. George Daher*, C.J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*John A. Taylor* for Marilyn C. Avery.

*Stephen A. Greenbaum* for Sandra C. Steele.

LIACOS, C.J. In this case, we consider whether an appellate court has the authority to impose sanctions on a party or on her attorney for inappropriate matter contained in her appel-

[1]Sandra C. Steele *vs.* Marilyn C. Avery.

late brief. We limit our discussion of the facts to the proceedings following trial. We need state only that the underlying action, which arose in the Boston Housing Court, involved a dispute about the rent-control status of an apartment in the city of Boston. The apartment was occupied by Marilyn Avery and owned by Sandra Steele. Avery appealed from the dismissal of her complaint after trial and from the entry of a default judgment against her in a subsequent summary process action brought by Steele. The Appeals Court, in an unpublished memorandum of decision under Appeals Court Rule 1:28, dismissed Avery's appeal on jurisdictional grounds and affirmed the default judgment.

At the conclusion of its memorandum and order, the court stated the following: "*Steele's request for sanctions.* In her brief . . . Steele requests the imposition of sanctions against Avery because of disrespectful and irrelevant passages in her brief as well as allegations which are totally without record support. We allow the request and award to Steele double the costs of the consolidated appeals." Avery sought further appellate review in this court of the Appeals Court's dismissal of her original appeal and the award of double costs. We granted Avery's petition solely on the issue of the propriety of the assessment of double costs by the Appeals Court.

Before we consider an appellate court's authority to impose sanctions, we think it important to set forth the allegedly offending passages of Avery's brief. These passages generally ignore the written findings of the Housing Court judge, argue matters not raised at trial, refer to facts not in the record and often fail to provide any relevant citation of authority. It is fair to say that, while the substantive appeal may not have been wholly frivolous, it was of dubious merit.[2]

---

[2]We note that the Appeals Court referred to a three-page portion of Steele's brief, which in turn makes several references to portions of Avery's brief. We have reviewed the briefs of the parties in their entirety. The statements we reprint are from the passages referenced by Steele. We have condensed the passages. Our review of Avery's brief satisfies us that the passages below comprehensively present the inappropriate material.

Steele's request for sanctions pointed to two types of "inappropriate

Steele argued that this "inappropriate matter" violated

matter."

(1) *Request for documents.* Because an issue allegedly arose as to the amount of rent that a previous tenant had paid to Steele, Avery suggested in a footnote: "Since the honesty of an officer of the court is in issue [Steele is a practicing attorney], and Attorney Steele had no records or independent recollection of what [the previous tenant] was paying . . . the Appellant requests that this [Appeals] [C]ourt . . . compel the production of certified copies of Attorney Steele's tax returns for the years [in question]. . . . An examination of her tax returns may well reveal what rent was actually being charged, while establishing whether Attorney Steele's conduct has been criminally and professionally culpable."

(2) *"[C]ompilation of insults . . . and unsubstantiated and irrelevant hypotheticals."* (a) Regarding the judge's finding that Steele's application for a decontrol certificate was submitted properly to the Boston Rent Equity Board (rent board), despite the fact that it had a time stamp of 9:43 P.M. upon it, Avery stated: "As a matter of pure speculation, the [time stamp] machine may have been mis-set or malfunctioning. Alternatively, [the messenger] may have arrived . . . after the . . . office had closed and secured entry while the cleaning personnel were vacuuming the suite, and simply punched the form in himself at 9:43 P.M. Perhaps [the messenger] convinced a night watchman who was unfamiliar with the proper handling procedures to take the materials and punch it in for him. *Perhaps Attorney Steele bribed someone to time-stamp the letter after-the-fact in anticipation of the trial, only to discover that the date mechanism could be freely changed on the machine after-hours but not the time mechanism.* Ms. Avery does not pretend to know why Attorney Steele's single most significant document purports to show that it was received by the [rent board] at a time when most people are preparing for bed." (Emphasis supplied.) There was no evidence to support this kind of speculation.

(b) Avery stated: "Ms. Avery *has no independent factual basis for concluding that the [photocopied application for decontrol] was altered from its original form,* while contending that the possibility clearly exists and that Attorney Steele was obliged to produce the original for examination so that Ms. Avery could discount that possibility to her satisfaction. . . . [A]n examination of the document shows that a key alteration would have been extremely easy to carry out. There is only one reference to the apartment number, and it appears at the end of a line. A bit of 'white out' and the same type-set is all that would be needed to change the numeral '1' [a properly decontrolled unit] to a '2' [Avery's unit]. . . . One may surmise that the application [for decontrol of the unit later occupied by Avery] was simply rejected and sent back. Alternatively, one may surmise that the Unit 1 [not Avery's unit] application was not filed on [the same date as the application for Avery's unit]. Perhaps the clerk saw that it was the only application which was not signed and gave it back — so that Attorney Steele 'refiled' it with her letter . . . . *Perhaps she filed the application on [Avery's unit] for some other reason - who knows?* Since Attorney Steele could not give any account as to what happened with her applica-

Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921

tion on [the other unit] from personal knowledge and there was disagreement as to what the [Rent Board's] records showed, *Avery can not* [sic] *discount the possibility that the time-stamped letter . . . originally referred to [the other unit] before being fraudulently altered.*" (Emphasis supplied.) Again, there was no record basis for this kind of argument.

(c) Avery stated: "Attorney Steele would have the court believe that she is illiterate, naive, and/or stupid" (because Steele never questioned the fact that she had not received a response from the rent board).

(d) Avery stated: "Attorney Steele's 1986 application included the same Instructions sheet [stating that a certificate of decontrol would be issued upon approval of the application], but she apparently did not read it, or could not fathom its plain meaning on the occasion of that submission either."

(e) In an argument heading, Avery stated: "The trial court ignored the greater weight of the evidence in basing his decision entirely upon the Attorney Steele's credibility and asserted stupidity." This misrepresented the trial judge's carefully written memorandum of decision.

(f) Avery stated: "In short, Attorney Steele would have the court believe that, through a combination of ignorance on her part and of repeated, faulty communications on the Board's part, she always believed prior to the initiation of this suit that she had properly decontrolled [Avery's unit] . . . ."

(g) After a discussion of how Steele was able to testify to numerous minor details, but could not remember "rather basic events," Avery stated: "Attorney Steele has always displayed amazing stupidity - casting her credibility in its most charitable light, - with respect to the prior tenancies at [Avery's unit]. Attorney Steele was forced to reveal the identity of two prior tenants . . . but she was able to otherwise display a high degree of ignorance as to precisely when [one of these prior tenants] moved into the unit . . . when she moved out several years later, when [the other prior tenant] moved in, whether either of them had leases, or any recollection or record of what their rental terms were at the inception of their tenancies respectively, or in subsequent years."

(h) With regard to a document that Steele had filed in the summary process action, which stated that the tenant had made no complaints about the unit, when in fact Avery had made several written complaints which were part of the record, Avery stated: *"In the course of trying to bluff, bluster, and obstruct her way past Ms. Avery's legal rights, Attorney Steele has regrettably resorted to outright dishonesty. Her patently perjurious answers to [the questions concerning tenant complaints] is proof of it, and goes directly to her credibility in the principal action . . ."* (emphasis supplied).

It should be emphasized that, to the extent that the issues were raised, none of these claims was sustained by the judge.

(1975),[3] and entitled her to an award of attorney's fees
against Avery's counsel pursuant to the court's "general pow-
ers" and Mass. R. Civ. P. 11, 365 Mass. 753 (1974). Steele
also. cited G. L. c. 211, § 10 (1990 ed.), which provides that
the Supreme Judicial Court may impose double costs on an
appellant when an appeal is frivolous, immaterial, or in-
tended for delay.

Steele's reliance on rule 11 and G. L. c. 211, § 10, is inap-
propriate. Rule 11 does not apply to appellate briefs.[4] Simi-
larly, Steele's reference to c. 211, § 10, fails to support an
award of double costs by the Appeals Court, because that
statute authorizes this court, and not the Appeals Court, to
make such an award. Nevertheless, G. L. c. 211A, § 15
(1990 ed.), mirrors c. 211, § 10, and provides that the Ap-
peals Court may impose double costs on an appellant when
an appeal is frivolous, immaterial, or intended for delay.
That statute expressly allows the Appeals Court to award
double costs either on a party's motion or sua sponte. Addi-
tionally, Mass. R. A. P. 25, as appearing in 376 Mass. 949
(1979), provides: "If the appellate court shall determine that
an appeal is frivolous, it may award just damages and single
or double costs to the appellee, and such interest on the
amount of the judgment as may be allowed by law." The
Appeals Court cited no statute or rule, but we assume it ac-
ted pursuant to its power under G. L. c. 211A, § 15, and rule
25, to impose double costs on Avery because her brief con-
tained "disrespectful and irrelevant passages" and "allega-
tions . . . totally without record support." The Appeals Court
did not state any basis for its award, other than the reference
to the inappropriate matter in Avery's brief.[5] Neither did it

---

[3]This rule requires that arguments in an appellate brief "shall contain
the contentions of the appellant with respect to the issues presented, and
the reasons therefor, with citations to the authorities, statutes and parts of
the record relied on."

[4]The rules of civil procedure do not apply to proceedings before an Ap-
peals Court panel. See Mass. R. Civ. P. 1, as amended, 405 Mass. 1501
(1989).

[5]The court could have been more specific in identifying the passages of
Avery's brief that it considered improper. However, given the wide discre-

explain its reason for sanctioning Avery rather than Avery's counsel, when Steele's request for sanctions had asked expressly that counsel be sanctioned.

Appellate courts are authorized by statute to award double costs to an appellee in a civil case when the appeal is frivolous, immaterial, or intended for delay. See G. L. c. 211, § 10; G. L. c. 211A, § 15; Mass. R. A. P. 25. Rule 25 does not specify whether such costs are to be assessed against the party or the attorney. Although we have not considered the issue directly, courts interpreting the cognate Federal rule, Fed. R. A. P. 38, have held that sanctions under the rule may be imposed on either the party or the attorney.[6] See *Romala Corp.* v. *United States*, 927 F.2d 1219, 1225 (Fed. Cir. 1991), and cases cited. We agree.

Although the Appeals Court in this case made no express finding that Avery's appeal was frivolous, immaterial, or intended for delay, we have the entire record before us and may decide the issue under rule 25 and G. L. c. 211, § 10. *Muzichuk* v. *Liberty Mut. Ins. Co.*, 2 Mass. App. Ct. 266, 268 (1974), and cases cited.

An appeal is frivolous "[w]hen the law is well settled, when there can be no reasonable expectation of a reversal . . . ." *Allen* v. *Batchelder*, 17 Mass. App. Ct. 453, 458 (1984). See *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 717 (1991). Unpersuasive arguments do not necessarily render an appeal frivolous. *Shahzade* v. *C.J. Mabardy, Inc.*, 411 Mass. 788, 797 n.8 (1992). *Glorioso* v. *Retirement Bd. of Wellesley*, 401 Mass. 648, 652 (1988). The determination whether an appeal is frivolous is left to the sound discretion of the appellate court. *Id.*

Our review of the record indicates that Avery's appeal was dismissed because she had filed her only notice of appeal while a posttrial motion was still pending, and thus the notice

---

tion that the Appeals Court has in this area, and the nature of some of the statements in the brief, we cannot say that the court abused its discretion in finding some of the statements to be improper.

[6]Sanctions under G. L. c. 211, § 10, or c. 211A, § 15, however, are to be taxed against "the appellant."

was a nullity. See *Anthony* v. *Anthony*, 21 Mass. App. Ct. 299, 302 (1985). While we do not conclude that every issue raised in Avery's appeal was frivolous, we agree with the view expressed by the *Romala Corp.* court. "[S]ome of [the] arguments are based on misrepresentations and distortions of [her] opponent's arguments and the [Housing] Court's opinion. . . . [E]ven the presence of a few non-frivolous arguments does not prevent an appeal as a whole from being deemed frivolous." *Romala Corp., supra* at 1224.

Inappropriate argument and unsubstantiated statements in a brief may infect an otherwise meritorious appeal so pervasively as to make it frivolous, see, e.g., *id.*; *Slack* v. *St. Louis County Gov't*, 919 F.2d 98, 99-100 (8th Cir. 1990). See also *Porco* v. *Porco*, 752 P.2d 365, 369 (Utah Ct. App. 1988). When "appellate tactics . . . consist[ ] almost entirely of irrelevant and misleading arguments as well as outright misrepresentation, [such tactics] exceed all permissible bounds of zealous advocacy and have been repeatedly condemned." *Romala Corp., supra.*

In concluding that the appeal at bar is frivolous, we remain mindful that many courts have warned against imposing sanctions for frivolousness except in egregious cases. See, e.g., *id.* ("sanctions should never lightly be imposed"); *Mission Denver Co.* v. *Pierson*, 674 P.2d 363, 365-366 (Colo. 1984). In our view, this case is an egregious one. As the *Romala Corp.* court noted: " 'A frivolous appeal imposes costs not only upon the party forced to defend it, but also upon the public whose taxes supporting this court and its staff are wasted on frivolous appeals.'. . . This is particularly true in a case such as this one, in which a party has misrepresented the holding of the trial court and misstated the opposing party's principal position. By forcing the court to expend extra time and effort in carefully double-checking every reference to the record and opposing counsel's briefs, lest we be misled, such argumentation threatens the integrity of the judicial process and increases the waste of resources." *Romala Corp., supra* at 1224, quoting *Finch* v. *Hughes Aircraft Co.*, 926 F.2d 1574, 1578 (Fed. Cir. 1991).

We note also that "court[s] of superior jurisdiction [have] the inherent power . . . to punish those who obstruct or degrade the administration of justice." *New England Novelty Co.* v. *Sandberg,* 315 Mass. 739, 746, cert. denied, 323 U.S. 740 (1944). This court and the Appeals Court have wide discretion to determine when a party or attorney before them has acted in a manner warranting the imposition of sanctions. We disagree with the Appeals Court only on the issue whether the costs should be paid by the attorney rather than the appellant. The inappropriate material that the court referred to was in a legal brief, prepared and signed by Avery's counsel. Counsel for both parties have indicated that Avery was not the motivating force behind the inclusion of this material. Moreover, as a lay person, she would have no reason to suspect that the statements were not part of a proper legal argument. Absent some indication that Avery herself was responsible for the inappropriate material, we believe it inappropriate to impose sanctions against her.

Accordingly, we vacate the Appeals Court order imposing double costs on Avery and substitute an order imposing double costs on her attorney for the consolidated appeals heard by the Appeals Court.

*So ordered.*