MICHAEL T. LONG & another[1] *vs.* MARTHA'S VINEYARD
LAND BANK COMMISSION.

No. 92-P-1276.

Dukes County. September 22, 1993. - November 23, 1993.

Present: BROWN. FINE. & LAURENCE. JJ.

*Martha's Vineyard Land Bank Commission. Real Property*, Sale.
*Nominee.*

In the circumstances of a change of ownership certain land in Duke's
County, accomplished by use of a corporation whose sole asset during
its entire existence was the land, the "substantial nature of the transac-
tion" was a routine sale of real estate, subject to the applicable transfer
fee mandated by St. 1987, c. 673, amending St. 1985, c. 736. [550]

CIVIL ACTION commenced in the Superior Court Depart-
ment on August 29, 1991.

The case was heard by *John Paul Sullivan*, J., on a state-
ment of agreed facts.

*Ellen B. Kaplan* for the plaintiffs.

*Ronald H. Rappaport* (*Russell Beck* with him) for the
defendant.

FINE, J. The Martha's Vineyard Land Bank Commission
(Land Bank) may exact a fee in the amount of two percent
of the purchase price whenever a "real property interest" in
Duke's County is transferred. St. 1987, c. 673, amending St.
1985, c. 736. "Real property interest" is defined in § 1 of the
Act broadly, but there are a number of exemptions. One of
the exemptions is "the interest of a stockholder in a corpora-
tion, or a partner in a partnership unless any real property
interest has been transferred to such corporation or partner-
ship for the purpose of evading the fee imposed by [the stat-

---

[1]Ann M. Long.

ute]."[2] The case before us involves a change in ownership of
real property accomplished by use of a corporation whose
sole asset during its entire existence was a piece of Dukes
County real estate. In a dispute between the Land Bank, and
Michael T. and Ann M. Long, who, as a result of a series of
transactions involving the corporation, acquired ownership of
the property, a Superior Court judge ruled in favor of the
Land Bank, and we affirm.

We summarize the agreed facts. The Brydens (Peter D.
and Christine M.) owned a fifty percent interest in real es-
tate in Edgartown, and T.J. Donahue owned the other fifty
percent interest. The property was encumbered by two mort-
gages. In January of 1990, they formed a corporation (of
which the Brydens, on the one hand, and Donahue, on the
other, each owned fifty percent of the stock) to which they
conveyed the real estate. The corporation had no other as-
sets, and the Brydens and Donahue continued personally to
make payments on the mortgages. On February 26, 1990,
the Longs purchased the Brydens' fifty percent interest in the
corporation. The Longs paid the Brydens $20,000 and as-
sumed the Brydens' portion of the mortgages. The amount
due on the mortgages was $170,000. On December 26, 1990,
the corporation conveyed a one-half interest in the property
to the Longs and the other half interest to Donahue. The
corporation then went out of existence.[3] The Land Bank noti-
fied the Longs that a fee was due from them in connection

---

[2]The remaining exemptions referred to in § 1 include:

"[T]he dominant estate in any easement or right of way; the right to
enforce any restriction; any estate at will or at sufferance, and any
estate for years having a term of less than thirty years; the rever-
sionary right, condition, or right of entry for condition broken; [and]
the interest of a mortgagee or other secured party in any mortgage
or security agreement."

There are additional exemptions in § 12 of the Act. Section 12(j) exempts
"transfers made to a stockholder of a corporation in liquidation of the cor-
poration, and transfers made to a partner of a partnership in dissolution of
the partnership." For the reasons stated in this opinion, the plaintiffs are
not entitled to the benefit of that exemption.

[3]Donahue subsequently conveyed his fifty percent interest in the land to
the Longs for $100,000. The amount of the fee ordered by the Land Bank

with the February 26, 1990, transfer of stock. The Longs responded that they were entitled to the benefit of the exemption because the corporation was formed and the property conveyed to it not to evade the fee but for purposes unrelated to the fee. They stated that the corporate form was used to avoid the Brydens' creditors, for Federal income tax purposes, and to afford restructuring of Peter Bryden's holdings to avoid loss or sale due to adverse consequences of his business dealings.[4] After a public hearing, the Land Bank determined that the statutory fee, along with interest and penalties, was due. The Longs paid $2,908.45, the return of which they seek in this action.

The judge considered the facts in light of the language of the statute[5] and the legislative purpose and scheme and ruled that the transaction in issue was not within the exemption. He stated:

> "If the Longs' interpretation of the Act is valid there exists a significant loophole in the Land Bank Act almost certainly unintended by the Legislature. Specifically, the imposition of a Land Bank fee could be avoided in every transaction by (1) creating a shell corporation; (2) transferring real estate into that corporation; (3) selling the stock of that corporation; and then (4) dissolving the corporation, thereby placing the real estate in the name of the ultimate purchaser.
>
> . . .
>
> "It is clear that the statutory exclusion of stock transfers from the definition of 'real property interest' is

---

with respect to that transfer, $2,000, was paid by the Longs, and the matter is not in issue.

[4]On August 2, 1991, a creditor alleging that the transfer of property by Peter D. Bryden to the corporation was a fraudulent conveyance obtained a judgment under G. L. c. 109A.

[5]The Land Bank has promulgated regulations covering issues similar to those raised in this case. However, they took effect after the Longs' purchase of stock in the corporation, the transaction on which the Land Bank based its notice to the Longs that a fee was due. We decide the case, therefore, without relying on the regulations which would have added support to the Land Bank's position.

meant to exclude only transfers of stock in corporations which transacted business in the ordinary sense and not where a shell corporation functions solely as a nominee. Were that not the legislative intent, the statutory objective could be frustrated simply by the creation of legal fictions."

We assume, as the Longs contend on appeal, that the original purpose of the creation of the corporation and the transfer of the property to it were not for the purpose of avoiding the Land Bank fee. We might even assume, without deciding, that the required payment is not a "fee," as it is referred to in the statute, but a tax. Tax statutes are generally strictly construed. See *McCarthy* v. *Commissioner of Rev.*, 391 Mass. 630, 633 (1984). Section 14A of the Act, however, expressly provides that it "shall be liberally construed to effect [its] purposes."

We agree with the trial judge that, under any reasonable and common sense construction of the statute, the exemption was inapplicable. On the instant facts, the use of the corporate form was an empty formality and, for purposes of the fee requirement, should be disregarded. Compare *Koch* v. *Commissioner of Rev.*, 33 Mass. App. Ct. 707, 715 (1992), further appellate review granted, 414 Mass. 1103 (1993). The corporation had no assets other than the real estate; it existed only to hold title to the real estate; it had no existence at any point in time significantly before or after the transfers; and, as a result of the series of transfers in which the Longs engaged, within a relatively brief period of time the ownership of real estate passed from the Brydens to them in exchange for valuable consideration. We consider the "substantial nature of the transaction," see *Commissioner of Corps. & Taxn.* v. *Dalton*, 304 Mass. 147, 150 (1939), and conclude that it constituted a routine sale of real estate of the kind the statute was intended to reach.

*Judgment affirmed.*

BROWN, J. (concurring). Oblivious to the wake-up call of *Avery* v. *Steele*, 414 Mass. 450 (1993), members of the bar still persist in bringing lawsuits that are so clearly devoid of merit that one is hard pressed not to suspect that monetary gain, i.e., a fee, is the only possible reason for doing so.[1] I repeat, once again, the same old song.[2] See, e.g., *Hodge* v. *Klug*, 33 Mass. App. Ct. 746, 759 (1992) (Brown, J., concurring). Is anybody listening, or reading for that matter? "The absurd notion of a lawyer as a hired gun, who will do *anything* a client requests, has never had a place in our profession and must not be tolerated. See S.J.C. Rule 3:07, Canon 7, DR 7-102(A)(1) & (7), 382 Mass. 785 (1981)" (emphasis original). *Id.* at 760.

This case is absolutely frivolous, and, as the majority states, even if we assume the plaintiffs' underlying premises to have some substance, which neither does, this hapless challenge to the defendant's fee was foredoomed. In the words of the majority, it is beyond "reasonable [or] common sense" or thoughtful legal analysis by counsel for the plaintiffs that "the exemption [here] was . . . applicable." As it is apparent that neither an important principle nor a matter of conscience is involved here, I am puzzled why counsel did not advise the client that the legal fees generated in this matter would be far in excess of any amount that might have been recovered from the defendant commission. Of course, when you factor in the impossibility of success, then counsel's performance becomes even more disturbing.

This is yet another painful example of how "courts are too frequently called upon to expend their limited resources to assist the needy by the machinations of the greedy." *Piccicuto* v. *Dwyer*, 32 Mass. App. Ct. 137, 140 (1992). Double costs of appeal should be imposed and the attorney for the plaintiffs should be ordered to pay the defendant's legal fees. See *Avery* v. *Steele*, *supra* at 457. If lawyers do not see the light, they should be made to feel the heat.

---

[1] See also *VMS Realty Inv., Ltd.* v. *Keezer*, 34 Mass. App. Ct. 119, 120 (1993).

[2] This is no less than a "three-peat."