## BUILDING INSPECTOR OF PEABODY vs. NORTHEAST NURSERY, INC., & another.[1]

Essex. February 7, 1994. - July 19, 1994.

Present: WILKINS, ABRAMS, O'CONNOR, & GREANEY, JJ.

*Zoning*, Agriculture. *Contempt. Practice, Civil*, Appeal, Frivolous action, Attorney's fees, Costs. *Words*, "Agriculture," "Horticulture."

The judge in a civil action correctly determined that the business of selling trees and bushes, planted and nurtured elsewhere and delivered to the business premises ready for marketing, does not constitute "agriculture, horticulture, floriculture, or viticulture," within the meaning of G. L. c. 40A, § 3, so as to exempt the business activity from the restrictions of the applicable zoning ordinance. [404-405]

Defendants were correctly held in contempt for a clear and undoubted violation of a clear and unequivocal injunctive order prohibiting them from conducting a business on residentially zoned property. [405-406]

This court declined to award the plaintiff attorney's fees and costs pursuant to Mass.R.A.P. 25, where the applicable law was not so well settled that the defendants' arguments were frivolous. [406]

CIVIL ACTION commenced in the Superior Court Department on March 27, 1992.

The case was heard by *John T. Ronan*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*John R. Keilty* for the defendants.

*Lawrence J. O'Keefe*, City Solicitor, for the plaintiff.

O'CONNOR, J. A judge of the Superior Court preliminarily enjoined the defendants "from using the residential property Wildwood II abutting the property identified as Northeast Nursery, Inc., for the sale of nursery or nursery related products, or for uses other than the planting and cultivation of

---

[1] Andrew Cotreau, trustee of the Essex Nursery Trust.

agricultural, horticultural, floricultural or viticultural products." Then, after an evidentiary hearing, a different judge found the defendants in civil contempt of the preliminary injunction and assessed a fine of $5,000 against each defendant. Also, in response to the plaintiff's complaint for declaratory and injunctive relief, the judge permanently enjoined the defendants from "using [Wildwood II] except for planting or cultivating agricultural, horticultural, floricultural or viticultural products" unless and until they receive an appropriate special permit from the city of Peabody. The defendants appealed from the judgment of contempt and the judgment in the underlying action. We transferred the case to this court on our own initiative. We now affirm both judgments.

We summarize the judge's findings, which were dictated in the courtroom, all of which have substantial basis in the evidence. The owner of all the real estate involved in this case, which is in Peabody, is the defendant Andrew Cotreau. The property is occupied by the defendant, Northeast Nursery, Inc. (Northeast), of which Cotreau is the principal officer and sole shareholder. The property was acquired by Cotreau in three separate transactions. The first parcel acquired was 4.4 acres at 234 Newbury Street and is situated in the B-H (Business-Highway) zoning district. At 234 Newbury Street there is a sales office. "Northeast . . . deals in nursery stock and related product. It sells to . . . area landscapers, garden designers and developers and any other business entity which sees fit to do business with it and it also sells retail to the public." Northeast sells a variety of trees and shrubs, as well as flowers and related products such as loam and mulch.

"In its entirety Northeast imports from off site its inventory and those related products. . . . These trees or shrubs, or bushes are produced elsewhere and cultivated to order, size and status. These trees or shrubs or bushes are then root-balled and burlapped, or otherwise protected, root protected and shipped to Northeast in an already established, for resale, status. There are smaller nursery products of tree and bush, or flower-type which arrive at the locus, rooted in

plastic or other like containers. These arrive similarly, however, ready for instant resale."

The judge also found that the "principal cultivation, if it be that," that occurs at 234 Newbury Street "is to make sure the product is preserved as it arrived and that it remains in a suitable condition for resale. There is no evidence of any other type of cultivation such as growth, hybriding, breed improvement, transferring. Unsold trees and the like, whose commercial value would warrant, are winter stored by depositing the enclosed root ball in its protective container within a mulch pile to prevent root freezing.

"In 1987," according to the findings, "Northeast expanded its activities into an adjacent location which was purchased by Cotreau, 557 Lowell Street. That parcel became the second of the three, which presently comprise a tract of about 11 acres. 557 Lowell Street, while contiguous on one of its borders with 234 Newbury Street, nevertheless, was in a R-1 district. Section 4.2.2 of [the zoning ordinance] required then, as it does now, that a special permit be obtained for the use to which Northeast wanted to put 557 Lowell Street and was pursued and thereafter acquired by the defendants on April 22, 1987. . . . Apparently business continued to improve, because next attention was given to that part of the parcel called Wildwood II Development . . . the third acquisition."

Wildwood II was unimproved land. The entire area was wooded. In February, 1992, all the trees and bushes, including the stumps, were removed. The "earth itself was moved about so that the whole area was made level and stripped of gravel and topsoil." The plaintiff building inspector then served the defendants with a "[c]ease and [d]esist" order that was designed "to prohibit the defendants from expanding their nursery business into the [residentially] zoned land, unless and until and only after they should obtain a special permit. However, the defendants informed the building inspector that they declined to comply with his order." The litigation leading to this appeal ensued.

As we have indicated above, a judge preliminarily enjoined the defendants "from using the residential property Wildwood II . . . for the sale of nursery or nursery related products, or for other uses other than the planting and cultivation of agricultural, horticultural, floricultural or viticultural products until further order of [the court]." Nevertheless, "even after service of the building inspector's petition for contempt," the defendants "wilfully, intentionally and with knowledge that the following acts were barred or prohibited . . . conducted on the Wildwood II area an earth moving, loading and transfer project, transferring to an off-site location certain large amounts of gravel and other earth products." Furthermore, the judge found, despite the defendants' knowledge of the preliminary injunction, they parked dump trucks and other equipment overnight on Wildwood II, stored nursery products and other items there, and even sold nursery products at that location.

Section 4.1 of the Peabody zoning ordinance says, "No building or structure shall be erected, altered or used and no premises shall be used for any purpose or in any manner other than as set forth in section 4.2 schedule of use regulations in this ordinance . . . ."

Section 4.2.2 of the ordinance, under R-1 Residential District (Wildwood II being within such a district) requires a special permit for: "[c]ommercial greenhouses, salesrooms or stands for the sale of nursery, garden or farm products."

It is clear, and the defendants do not contend otherwise, that the ordinance required a special permit for the uses of Wildwood II contemplated by the defendants unless, as the defendants argue, those intended uses are exempted from the zoning requirements by G. L. c. 40A, § 3 (1992 ed.), which provides in relevant part that "[n]o zoning ordinance . . . shall . . . prohibit, unreasonably regulate or require a special permit for the use of land for the primary purpose of agriculture, horticulture, floriculture, or viticulture." The defendants' position is that their business is agriculture or horticulture within the meaning of G. L. c. 40A, § 3, and that therefore they cannot be prevented by ordinance from ex-

panding their business to Wildwood II. The judge did not agree. We agree with the judge.

The defendants have called numerous cases to our attention, including *Deutschmann* v. *Board of Appeals of Canton*, 325 Mass. 297 (1950); *Lincoln* v. *Murphy*, 314 Mass. 16 (1943); *Moulton* v. *Building Inspector of Milton*, 312 Mass. 195 (1942); and *Tisbury* v. *Martha's Vineyard Comm'n*, 27 Mass. App. Ct. 1204 (1989), contending that those cases support the idea that the defendants' activities, as described by the judge in his findings, constitute agriculture or horticulture. The cited cases simply do not provide the support the defendants claim. In each instance, the raising or propagation of plant or animal life was a central and primary component of any activity deemed by the court to constitute agriculture, horticulture, floriculture, or viticulture. At best, the rationale of those cases might suggest that activities that are only ancillary or incidental to the raising or propagation of plant or animal life on the premises would themselves be deemed to come within the definition of agriculture, horticulture, floriculture or viticulture, see *Needham* v. *Winslow Nurseries, Inc.*, 330 Mass. 95, 100-101 (1953), but we are aware of no case that suggests that the business of selling trees and bushes, planted and nurtured elsewhere and delivered to the business premises ready for marketing, as here, qualifies for exemption under G. L. c. 40A, § 3. Indeed, the common understanding of the words "agriculture" and "horticulture" is otherwise. The judge was correct, therefore, in declaring that the activities of the defendants are not immune under G. L. c. 40A, § 3, and in permanently enjoining the defendants from using Wildwood II, except for planting or cultivating agricultural, horticultural, floricultural or viticultural products, without a special permit.

We turn briefly to the defendants' challenge of the contempt judgment based on the defendants' refusal to obey the preliminary injunction prohibiting the defendants from using Wildwood II "for the sale of nursery or nursery related products, or for uses other than the planting and cultivation of agricultural, horticultural, floricultural or viticultural prod-

ucts." In order "[t]o constitute civil contempt there must be a clear and undoubted disobedience of a clear and unequivocal command." *United Factory Outlet, Inc.* v. *Jay's Stores, Inc.*, 361 Mass. 35, 36 (1972). The judge was well warranted in concluding that the preliminary injunction constituted a clear and unequivocal command, and that the defendants clearly and without doubt disobeyed it. Indeed, it would be most difficult to justify any other conclusion given the judge's subsidiary findings.

The plaintiff requests an award for his attorney's fees and costs pursuant to Mass. R. A. P. 25, as amended, 378 Mass. 925 (1979). See *Avery* v. *Steele*, 414 Mass. 450 (1993). This case is not like *Avery*, which involved a brief containing clearly inappropriate material in the form of misrepresentations as to the holding of the trial court and as to an opponent's arguments. Here, there are no such misrepresentations, and, although we do not find the defendants' arguments persuasive, we cannot say that the applicable law was so well settled that the defendants' argument was frivolous. Therefore, we deny the request for an award of attorney's fees and costs.

*Judgments affirmed.*