The plaintiff, Barron Chevrolet, Inc. (BCI), at the prompting of Reginald I. Barron, Sr., commenced this action in 2013, seeking an accounting from Reginald's former wife, defendant Linda R. Barron, relative to the time period at least between 2004 and 2007 when, pursuant to an order entered in the Arizona court with jurisdiction over their divorce, she controlled BCI's income. Acting on a motion for summary judgment filed by Linda,[2] a judge of the Superior Court (rule 56 judge) dismissed BCI's case after concluding that there was no genuine issue that she had already produced documentation sufficient to account for her activities during the term of the Arizona order. This appeal followed.[3]
Having conducted the required de novo review of the summary judgment record, and having viewed all material facts in the light most favorable to BCI as the nonmoving party, see Scholz v. Delp, 473 Mass. 242, 249 (2015), we affirm.
Background. The following undisputed facts are taken from the record.[4] BCI is a Delaware corporation which, at all material times, generated income by leasing out the property it owned in Danvers. At the time this complaint was filed, Reginald and Linda each owned forty-nine percent of BCI. The remaining two percent of BCI was divided among their three adult children.
Many years prior to the initiation of this action, Linda and Reginald were involved in divorce proceedings in Arizona. On November 8, 2004, the judge presiding over the divorce proceedings issued an order declaring Reginald in contempt and directing that the monthly income received by BCI for the lease of the Danvers property was thereafter to be directed to Linda, who was to deposit it "into a new corporate account under her control" and use it to make previously agreed-upon disbursements (Arizona order). The Arizona order was in effect for close to two and one-half years, from December of 2004, to mid-April of 2007, at which point the Arizona judge transferred control over BCI's rental income to a special master.
During the pendency of the Arizona order, Linda opened a checking account titled the "Linda R. Barron (FBO) Barron Chevrolet Lease Account," deposited the monthly rental income into it, and then disbursed the funds as required. On a monthly basis, she also provided Reginald or his attorneys, as well as BCI's accountant, with copies of (1) the bank statements for the account, (2) her own handwritten ledger in which she contemporaneously logged every transaction she conducted relative to BCI's rental income, and (3) the bills she paid on BCI's behalf.
On May 8, 2012, some five years after Linda last had control of BCI's rental income, Reginald allegedly sought and secured authorization to hire counsel on behalf of BCI to pursue material needed to complete an audit of BCI's finances "from 2007 to 2009" and, if necessary, to institute litigation to obtain the same.[5] Subsequently, on May 30, 2013, by then more than six years after Linda last had control of BCI's rental income, BCI, at Reginald's direction, commenced the present action, asserting a single count for an equitable accounting (and any resulting damages shown).[6] Linda responded, raising numerous affirmative defenses, including that she had already provided such an accounting, and asserting certain counterclaims.[7]
Discussion. 1. Accounting. BCI advances several arguments in support of its claim of entitlement to an accounting, none of which has merit.[8] Ultimately, however, the claim fails for a fundamental reason; namely, it is undisputed that BCI already received the accounting it seeks. As detailed supra, the summary judgment record reveals that, on a monthly basis during the term of the Arizona order, Linda provided BCI's accountant, as well as Reginald or Reginald's attorneys, with copies of multiple forms of documentation detailing her handling of BCI's rental income. The information and material she provided were extensive and detailed. BCI, for its part, has not produced any evidence that the documentation was insufficient to account for Linda's handling of BCI's rental income during the relevant time period.[9] Nor has BCI established that, more than six years after the fact,[10] there is now reason to believe that Linda misdirected or misappropriated any of BCI's funds. Simply put, there is no dispute that Linda has already accounted for her handling of BCI's rental income during the term of the Arizona order. Accordingly, she is entitled as a matter of law to judgment on BCI's claim for an equitable accounting.[11]
2. Fee issue. More than one year into this litigation and on the eve of the depositions of BCI and Reginald, BCI's second set of attorneys in this case filed an emergency motion to withdraw. According to the trial court docket entries, Reginald had previously fired BCI's first attorney. The second set of attorneys sought to withdraw due to what they suggested was an "irretrievable breakdown of communications," evidenced by Reginald's refusal to cooperate with them.
After a hearing, a different judge (fee judge) allowed the motion to withdraw, but ordered that "[a]ll costs associated with the plaintiff's change in counsel, including successor counsel's review of the case file, meetings with the client and notices to effectuate an appearance shall be borne exclusively by Reginald I. Barron, Sr., and not by the corporation" (fee order).
BCI argues that the fee judge abused his discretion in ordering Reginald to pay for BCI's successor counsel fees when Reginald was not even a party to the case. Additionally, BCI argues that it was deprived of due process when the fee order issued, requiring either Reginald to pay for costs associated with the change of counsel or BCI to "drop the lawsuit," without notice or opportunity to be heard.
To the extent that the fee order purported to order Reginald to pay BCI's legal fees, that issue is more properly raised by Reginald as the aggrieved party, not BCI. The portion of the order affecting BCI was that which prohibited it from paying for the costs associated with a second change of counsel. The fee judge found that Reginald was responsible for the repeated changes of counsel, and that Linda would be prejudiced as a BCI shareholder if the costs associated with another change of counsel were to be paid by corporate funds.[12] The fee order essentially prevented BCI from unnecessarily depleting corporate assets during the litigation. The harm identified by BCI, that it may be forced to drop the lawsuit, did not materialize here. We therefore need not address this theoretical issue. See Mullen v. Mullen, 7 Mass. App. Ct. 899, 900 (1979) (payment in satisfaction of support arrearages rendered moot issue of civil contempt for failure to make such payments).
3. Request for appellate attorney's fees and double costs. Linda requests that we declare BCI's appeal frivolous and award appropriate relief. We agree that BCI's appeal was frivolous and that an award of appellate attorney's fees and double costs is appropriate. See Avery v. Steele, 414 Mass. 450, 455-457 (1993). See also G. L. c. 211A, § 15. Linda may file supporting documentation for her request for appellate attorney's fees and double costs within fourteen days of the date of the rescript. See Fabre v. Walton, 441 Mass. 9, 10 (2014). The documentation should be detailed enough to allow this panel to properly calculate a fee award. See Fontaine v. Ebtec Corp., 415 Mass. 309, 324-325 (1993). BCI will have fourteen days thereafter within which to respond.
Judgment affirmed.

As several individuals share a surname, we use their first names to avoid confusion.

BCI also appeals from an order regarding attorney's fees.

BCI failed to include the required record references to the record in support of both its responses to Linda's statement of undisputed material facts and its own statement of additional facts. See Superior Court Rule 9A(b)(5)(ii) and (iv) (as to both, requiring "page or paragraph references to supporting pleadings, depositions, answers to interrogatories, responses to requests for admission, affidavits, or other evidentiary documents"). Like the rule 56 judge, therefore, we have not considered those responses or additional facts in reaching our decision.

Linda contests the assertion that BCI's board of directors authorized this action. She notes, among other things, that the purported authorization references an audit of BCI's finances for the time period of 2007 to 2009, while BCI now seeks an accounting from her for the term of the Arizona order, which ran from December of 2004, to mid-April of 2007. Because we affirm on other grounds, however, we need not reach that issue.

BCI seeks an accounting for not only the term of the Arizona order, during which Linda controlled the rental income, but also for the later time period during which the special master was in control. The special master is not a party to this case. Therefore, such an extended accounting could not be ordered as part of this case.

In one counterclaim, Linda sought an order directing BCI to issue her a certificate evidencing her stock in the company. The rule 56 judge ordered the entry of summary judgment in her favor on that counterclaim and BCI has not appealed from that ruling. Linda's other counterclaim, for money lent, was dismissed by stipulation of the parties.

We note that BCI has continued to argue on appeal issues regarding the Arizona order, despite the fact that those issues were waived by BCI's counsel during the summary judgment hearing. Additionally, BCI has argued on appeal issues that were never raised below, for example, that expert testimony was necessary to sustain summary judgment on the accounting claim. Those issues are deemed waived. See Carey v. New England Organ Bank, 446 Mass. 270, 285 (2006).

BCI suggests that the bank statements that Linda provided did not include copies of the fronts and backs for "some" of the checks she issued. BCI has failed, however, to provide examples or to otherwise establish that the missing front or back of any specific check is noteworthy. It is also undisputed that Linda provided copies of all of the checks in her possession, custody, and control. BCI also subpoenaed the bank and secured all of the documents within the bank's possession, custody, and control regarding the account.

Linda asserts that BCI's claim is barred by the applicable statutes of limitation and the equitable doctrine of laches. BCI has not responded to either of those affirmative defenses. Once again, however, we need not reach those issues given that we affirm on other grounds.

BCI argues that the summary judgment should be vacated because the rule 56 judge abused his discretion by denying BCI's belated request that he recuse himself. As the argument is made in a footnote, however, it does not rise to the level of appellate argument, and we deem it waived. Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). See Three Registered Voters v. Selectmen of Lynnfield, 90 Mass. App. Ct. 15, 21 n.18 (2016). We further note that, having reviewed the record, we see no basis for concluding that the rule 56 judge abused his discretion.

As counsel for Linda stated at the hearing on the motion, Linda "throughout the course of this case has essentially been paying almost half of the costs to sue herself and a hundred percent of the costs to defend herself."