NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1000

COLLEEN MIRANDA

vs.

ARION-XAMA OLIVEIRA DE MIRANDA.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a one-day trial on a complaint for annulment brought by the plaintiff-appellant, Colleen Miranda (wife), a Probate and Family Court judge found that the plaintiff failed to prove that the defendant-appellee, Arion-Xama Oliveira de Miranda (husband), fraudulently induced her into marriage in 2019.  The judge accordingly dismissed the complaint with prejudice.  On appeal, the wife challenges the applicable standard for annulment based on fraud, arguing that it was implicitly overruled by the Supreme Judicial Court's decision in Goodridge v. Department of Pub. Health, 440 Mass. 309, 332 & n.23 (2003).  The wife also contends that it was error for the judge to deny her motion to compel the release to her of forms

submitted by the husband to U.S. Citizenship and Immigration Services (USCIS) as part of his application to remove the conditions on his permanent residency. The wife argues that such forms were relevant evidence for purposes of the annulment trial as the forms required the husband to make sworn statements that his marriage was genuine and not undertaken to obtain immigration benefits. We affirm.

Background. The parties met at a bar in Boston in 2018. Several months later, they began seeing each other romantically; they became engaged to be married in 2019. In September of 2019, the couple travelled together to New York State where the husband met the wife's family. The parties were married on October 19, 2019, in Boston. Family members of both the wife and the husband attended the wedding, including the husband's mother who traveled from Brazil for the event. Thereafter, the parties began living together.

The husband came to the United States from Brazil on a tourist visa in 2016 and, at the time of trial, had continuously lived in the United States. By the time the parties met, the husband had overstayed his tourist visa and remained in the Unites States without legal immigration status; the wife was aware of these facts prior to their marriage. In December of 2019, the parties filed the husband's green card application, which included the wife's completion of USCIS Form I-130,

2

Petition for Alien Relative, on the husband's behalf, and a signed affidavit of support. The husband became a conditional permanent resident on August 25, 2020, at which point he received a green card that was valid for two years. To remove the conditions on his status, the husband was required to file USCIS Form I-751, Petition to Remove Conditions on Residence, between May 25, 2022 and August 25, 2022.

The parties decided to have children together, and their daughter was born on May 24, 2021. At trial, photos of the parties and their child during the first year of the child's life were submitted as evidence. These photos depict, among other events, the child's baptism which was attended by her extended family on both sides.

The family continued to reside together in a rented apartment after they were married. By April of 2022, they were actively searching for a home to purchase. Sometime before May 13, 2022, the parties made an offer on a home; the seller accepted the offer. The parties planned for the husband to be the sole mortgagor as he was the only party who was working at that time. The wife agreed to "gift" the husband $100,000 from her savings to serve as the down payment on the home.

On May 13, 2022, the husband was scheduled to sign the mortgage paperwork, but he instead informed the wife that he had changed his mind about purchasing the property. Text messages

3

exchanged between the parties on May 13 reveal that the husband attributed his change of heart to a breakdown in the marital relationship which culminated in a fight between the parties on May 11 and 12, 2022. The husband made multiple phone calls to attorneys during this period and admitted to speaking with an immigration attorney on May 13. On May 14, 2022, the wife left the marital residence with their child and moved to her father's home in Syracuse, New York, where they both have continued to reside until the time of trial.

The wife filed a complaint for annulment on July 25, 2022, alleging that the husband entered into the marriage in bad faith and with the sole objective of obtaining permanent residency in the United States. In the complaint, the wife further averred that she was unaware of the husband's true motives both at the time she entered into the marriage and in supporting the husband's application for permanent residency. The wife also requested the court to grant her custody of their daughter and order the husband to pay child support.

No testimony or evidence was submitted about the specifics of the husband's application to remove the conditions on his permanent residency status, but it is undisputed that the wife was neither asked to sign, nor did she sign, Form I-751. Prior to trial, the wife filed a motion to compel the release of any Form I-751 that the husband submitted to USCIS, averring that

4

its contents were relevant to the annulment proceedings.  After a hearing, the motion was denied on November 7, 2022.

A one-day trial took place on April 3, 2023, and the judge dismissed the complaint in a written order on April 7, 2023.  This appeal followed.[1]

Discussion.  1.  Standard for annulment based on fraud.  We consider questions of law de novo.  CP 200 State, LLC v. CIEE, Inc., 488 Mass. 847, 848 (2022).  The wife's primary argument, raised for the first time on appeal, is that the judge erred in dismissing the complaint for annulment in reliance on the standard set forth in Chipman v. Johnston, 237 Mass. 502, 503-504 (1921).  Chipman establishes that a plaintiff seeking annulment based on fraud must demonstrate that the defendant's fraudulent conduct went to the essence of the marriage.  Id. at 504-505.  The wife contends that the Supreme Judicial Court's decision in Goodridge, 440 Mass. at 332-333, implicitly overturned Chipman by redefining the meaning of the "essence" of a marriage.

We first address the issue of waiver, as raised by the husband.  "An issue not raised or argued below may not be argued for the first time on appeal" (citation omitted).  Carey v. New

---

[1] Although the plaintiff also appeals from the order denying her motion for relief from judgment, she makes no specific argument on appeal with respect to that decision.  Nonetheless, for the reasons herein, we affirm that order.

5

England Organ Bank, 446 Mass. 270, 285 (2006).  Such an argument is waived unless "such exceptional circumstances exist[] . . . as would justify our discretionary departure from that axiomatic principle of appellate practice . . . or where injustice might otherwise result" (quotation and citations omitted).  Gaw v. Sappett, 62 Mass. App. Ct. 405, 410-411 (2004).  Here, the wife did not raise her challenge to the standard for annulment based on fraud either at trial or in her motion for relief from judgment.  Thus, we conclude the argument is waived.

Waiver notwithstanding, we disagree with the substance of the wife's argument.  The Chipman court described the type of fraud that goes to the essence of a marriage contract as that which is by "its nature such a thing as either would prevent the party entering into the marriage relation, or, having entered into it, would preclude performance of the duties which the law and custom impose upon husband or wife as a party to the contract."  Chipman, 237 Mass. at 505, quoting Trask v. Trask, 114 Me. 60, 61 (1915).  Over eighty years later, in Goodridge, the court emphasized that "the exclusive and permanent commitment of the marriage partners to one another . . . is the sine qua non" of the marital relationship.  Goodridge, 440 Mass. at 332.  Both Chipman and Goodridge underscore the importance of the obligations owed by each party in a marriage to their spouse.  While the law has certainly evolved in its

6

understanding of the substance of such obligations, the emphasis on the integrity of the relational commitment remains intact from Chipman to Goodridge.  We see no reason to conclude that the language of Goodridge "implicitly overruled" the long-established Chipman standard for annulment.

Here, the judge reasoned that, under the Chipman standard, the wife had not met her burden of showing that the alleged fraud by the husband went to the essence of the marriage.  The wife was aware that the husband had no legal status in the United States when the two were married, and indeed she supported him in obtaining permanent residency after the fact. The parties were in a relationship for several months before the marriage took place, shared a "happy marriage" for two years, and raised a child together.  While the husband may have been motivated to abandon the pending real estate transaction and pursue divorce after learning of the option of pursuing nonconditional permanent residency without the support of the wife, this alone does not establish that the husband's essential motivation in entering the marriage three years earlier was to obtain a green card.  There was no error in the judge's application of the Chipman standard for annulment based on fraud.

2.  Motion to compel. Next, the wife argues that it was error for the judge to deny her motion to compel the production

7

of any documents filed with USCIS in connection with the husband's application for removal of the conditions on his permanent residency.  While, pursuant to Mass. R. Civ. P. 26 (b), 365 Mass. 772 (1974), parties may seek discovery regarding any non-privileged matter relevant to the subject matter of the action, "[t]he conduct and scope of discovery is within the sound discretion of the judge."  Solimene v. B. Grauel & Co., 399 Mass. 790, 799 (1987).  "While discovery orders are reviewable on appeal from entry of a final judgment, we do not interfere with the judge's exercise of discretion in the absence of a showing of prejudicial error resulting from an abuse of discretion."  Id.

Here, the record does not support, and the wife cites no caselaw to buttress, the contention that she was prejudiced by the judge's denial of the motion to compel.  Indeed, there is no evidence to suggest the contents of such a filing would have changed the outcome of the annulment trial.  The judge did not abuse her discretion in denying the wife's motion to compel.

3.  Fees.  The husband requests that the wife be sanctioned under Mass. R. A. P. 25, as appearing in 481 Mass. 1654 (2019), and G. L. c. 211A, § 15.  In our discretion and, under these provisions, this court may award double costs and fees "when the appeal is frivolous, immaterial, or intended for delay."  Avery v. Steele, 414 Mass. 450, 455 (1993).

8

We agree that the wife's appeal is frivolous, and accordingly, allow the husband's request for attorney's fees and costs.  See Mass. R. A. P. 25, as appearing in 481 Mass. 1654 (2019); Avery, 414 Mass. at 455 ("An appeal is frivolous [w]hen the law is well settled . . . [and] there can be no reasonable expectation of a reversal . . . .  The determination whether an appeal is frivolous is left to the sound discretion of the appellate court" [quotation and citations omitted]).  In accordance with the procedure specified in Fabre v. Walton, 441 Mass. 9, 10-11 (2004), the husband may, within fourteen days of the issuance of this decision, submit an application for attorney's fees and costs with the appropriate supporting materials.  The wife shall have fourteen days thereafter to file a response to that application.

Judgment affirmed.

Order denying motion for
 relief from judgment
 affirmed.

By the Court (Ditkoff,
 Englander & Smyth, JJ.[2]),

*Paul Little*

Clerk

Entered:  October 10, 2024.

---

[2] The panelists are listed in order of seniority.