## Carol Ann Judson vs. Essex Agricultural and Technical Institute & others.[1]

Essex. May 3, 1994. - July 5, 1994.

Present: Liacos, C.J., Wilkins, Abrams, Lynch, O'Connor, & Greaney, JJ.

*Practice, Civil,* Summary judgment. *County,* Commissioners, Liability for tort. *Workers' Compensation Act,* Coverage.

The so-called "public duty rule" had no application in the circumstances of an action brought by a student against a county vocational school seeking damages for the school's alleged negligence in failing to inspect the plaintiff's workplace and in failing to assure that the employer provided workers' compensation coverage for the plaintiff while she fulfilled a curriculum requirement of participation in course-related employment. [162-163]

A county vocational school had no duty to inspect a student's place of employment and to ensure the employer provided workers' compensation coverage to the student while she completed a curriculum requirement of course-related employment where no existing social values or customs demonstrated that such schools have recognized such an obligation creating an expectation in students and parents that the school in question would exercise reasonable care to protect the student from uninsured employers. [163-164]

A "placement agreement" signed by a student, her father, the student's employer and her vocational school instructor stating that the student must be covered by workers' compensation insurance while she fulfilled a curriculum requirement of participation in course-related employment did not impose a duty on the school to ensure that the student was in fact covered. [164]

---

[1]Director of Essex Agricultural and Technical Institute, and Essex County, by and through its county commissioners. The plaintiff makes no argument that these defendants are independently liable. The propriety of summary judgment therefore turns on the liability of Essex Agricultural and Technical Institute.

CIVIL ACTION commenced in the Superior Court Department on July 16, 1991.

The case was heard by *J. Harold Flannery*, J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Daniel T. Chabot* for the plaintiff.

*Patrick M. Hamilton* for the defendants.

LYNCH, J. The plaintiff appeals from summary judgment entered in favor of the defendants pursuant to Mass. R. Civ. P. 56, 365 Mass. 824 (1974). We transferred the case here on our own motion. After the case was transferred, we invited the parties to file supplemental briefs addressing the possible effect of St. 1993, c. 495, §§ 57 and 144 on this action. We affirm.

*Facts.* The following facts are not in dispute for the purpose of summary judgment. On July 19, 1988, while a student at Essex Agricultural and Technical Institute (EATI), the plaintiff was injured while working at Bradvue Morgan Farm (Bradvue). As part of the curriculum at EATI, students were required to participate in some type of employment related to their course work. It was the student's responsibility to find such related employment[2] and to have her employer complete EATI's placement agreement. EATI entered into a placement agreement (agreement) with Bradvue and the plaintiff. The agreement was signed by the plaintiff, her father, her employer, and her project instructor at EATI. The agreement contains the following notation: *"Student must be covered by Workman's* [sic] *Compensation Insurance"* (emphasis in original). This statement is followed with the query: "Is student covered by Workman's Compensa-

---

[2] The plaintiff explained the procedure for finding related employment as follows: "I had to take some papers from the department head of the Animal Science Department, and go around to different farms and ask if they needed help. And if they did were they willing to hire me under conditions, that they'd sign a paper saying the conditions that the school required for employment."

tion?" Bradvue answered, "Yes," to this inquiry.[3] The plaintiff concedes that she was aware that Bradvue was responsible for providing workers' compensation insurance. The agreement further provides:

> "It is understood by the employer that the student's project instructor will visit or call the student on the job for the purpose of consultation, to insure that both the employer and the student get the most out of this situation. The instructor will show discretion in the time and the circumstances of these visits.

> "The employer is aware of, and agrees to abide by, labor and wage laws as they may apply to this employment. This agreement may be terminated by mutual agreement at any time by either the cooperating employer or the school."

On July 19, 1988, while working at Bradvue, the plaintiff was injured when she fell from a barn loft. Contrary to the agreement, Bradvue did not provide workers' compensation insurance for the plaintiff.[4]

The plaintiff filed an eighteen-count complaint against the defendants. The plaintiff alleged that the defendants were contractually bound to confirm that the plaintiff was covered by workers' compensation insurance and to provide supervision to ensure that the plaintiff had a reasonably safe place to work; that the defendants were negligent in failing to confirm that the plaintiff was covered by workers' compensation insurance, and that the plaintiff had a reasonably safe work place; and that Bradvue was an agent of the defendants, therefore the negligence of Bradvue in failing to provide a reasonably safe work place was imputed to the defendants.[5]

---

[3] The plaintiff stated that the wife of the owner of Bradvue completed the agreement, including the portion concerning workers' compensation insurance.

[4] The plaintiff's complaint further alleges that Bradvue is in bankruptcy.

[5] This claim is not raised on appeal.

On October 23, 1992, the defendants' motion for summary judgment was allowed.

*Discussion.* "The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law. Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). See *Yakubowicz* v. *Paramount Pictures Corp.*, 404 Mass. 624, 626 (1989); *Leavitt* v. *Mizner*, 404 Mass. 81, 88 (1989); *Pederson* v. *Time, Inc.*, 404 Mass. 14, 16-17 (1989). We may consider any ground supporting the judgment. *Champagne* v. *Commissioner of Correction*, 395 Mass. 382, 386 (1985)." *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991). "[A] party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he demonstrates, by reference to material described in Mass. R. Civ. P. 56 (c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party's case." *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991).

The plaintiff contends that the judge erred in granting summary judgment because genuine issues exist concerning whether EATI had a duty to inspect the plaintiff's work place and whether EATI had a duty to determine whether Bradvue had workers' compensation insurance covering the plaintiff. The plaintiff argues that the special relationship exception to the public duty rule and the agreement imposed a duty of care on EATI. We hold that EATI had no duty to inspect the plaintiff's work place or to ascertain that Bradvue provided workers' compensation insurance for the plaintiff. Because we conclude that no such duty exists, we need not consider what effect, if any, St. 1993, c. 495, § 57, has on the plaintiff's claims.

"The public duty rule holds that the employment duties of public employees are generally owed only to the public as a whole and not to private individuals. There is an exception to

the public duty rule, however, when there is a 'special relationship' between the public employee and certain individual members of the public." *Onofrio* v. *Department of Mental Health*, 408 Mass. 605, 609-610 (1990), *S.C.*, 411 Mass. 657 (1992). The plaintiff's principal claims concern injuries alleged to have been caused by a public employee's negligence in failing to inspect the plaintiff's place of employment and to assure that Bradvue provided workers' compensation coverage for the plaintiff. The defendants' duty to members of the general public did not require them to inspect places of employment or to ascertain the extent of an employer's insurance coverage. Therefore, we decline to discuss the allegations against the defendants in the context of the special duty or special relationship cases. See *Mamulski* v. *Easthampton*, 410 Mass. 28, 29 (1991).

The plaintiff's complaint also alleges that the defendants have a duty under the agreement to inspect her place of employment and to ensure she was covered by workers' compensation insurance. In support of her argument, the plaintiff relies heavily on *Mullins* v. *Pine Manor College*, 389 Mass. 47 (1983). This reliance is misplaced. In *Mullins*, we decided that a college owed a duty to protect its students against the criminal acts of third persons and that the college's duty was grounded in existing social values and customs which demonstrated that the college community had "recognized its obligation to protect resident students from the criminal acts of third parties." *Id.* at 51. Thus, "[p]arents, students, and the general community . . . [had] a reasonable expectation, fostered in part by colleges themselves, that reasonable care [would] be exercised to protect resident students from foreseeable harm." *Id.* at 52. The college's duty of care was also predicated on the relationship between the college and the student and her parents. *Id.* at 53. Adequate security was a component of the package of services the college provided and for which students were charged; therefore, students and their parents relied on the college's willingness to provide such security. *Id.* at 53-54. Thus, the court determined that "a duty voluntarily assumed must be performed with due

care." *Id.* at 52. Each of these principles of law provided an adequate basis for imposing a duty on colleges to protect their students against the criminal, accidental, negligent, or intentional acts of third parties. *Id.* at 54, quoting *Carey* v. *New Yorker of Worcester, Inc.*, 355 Mass. 450, 452 (1969).

Neither factor exists in this case. We discern no existing social values or customs demonstrating that vocational schools, such as EATI, have recognized an obligation to protect students during their employment with third persons creating an expectation in students and their parents that EATI would exercise reasonable care to inspect the plaintiff's place of employment or to ensure that the plaintiff's employer provided workers' compensation insurance. Nor can the agreement be read as creating such a duty. The agreement's explicit statement that the student must be covered by workers' compensation insurance coupled with Bradvue's assurance that the plaintiff was covered by such insurance did not impose a duty on EATI to ensure that the plaintiff was covered. The agreement merely provided notice to the plaintiff and Bradvue that it was the plaintiff's employer's responsibility to provide such insurance.

Furthermore the agreement contains no assurance or representation that EATI would inspect the plaintiff's place of employment to ensure that it was safe. The agreement simply provides that a project instructor for EATI would call or visit the student to ensure that the employer and the student "get the most out of this situation." This statement does not create a duty to inspect the plaintiff's place of employment. It was the plaintiff's responsibility to find an employer, and under the terms of the agreement, Bradvue's responsibility to "abide by[] labor and wage laws as they may apply to this employment." Again, the agreement placed the duty to provide a safe place of employment squarely on the plaintiff's employer, Bradvue.

*Judgment affirmed.*