P. VANESSA SYMMONS & another[1] vs. WILLIAM B.
O'KEEFFE & others.[2]

Norfolk. September 13, 1994. - January 11, 1995.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Practice, Civil*, Summary judgment, Deposition, Frivolous action. *Trust*,
Removal of trustee. *Evidence*, Parol evidence, Hearsay, Relevancy and
materiality. *Fiduciary*. *Corporation*, Officers and agents. *Attorney at
Law*, Attorney-client relationship. *Privileged Communication*.

In a claim brought by the beneficiaries of certain trusts seeking removal of
the trustee pursuant to G. L. c. 203, § 12, the judge correctly entered
summary judgment for the defendant trustee where the plaintiffs did
not establish there was a genuine issue of material fact with respect to
the trustee's intent to create the trusts. [294-295]

The record of a civil claim brought by the beneficiaries of certain trusts,
seeking removal of the trustee for his hostility toward the beneficiaries,
did not support the allegations of any hostility other than that resulting
from the litigation, thus summary judgment was properly entered for
the defendant trustee. [295-296]

There was no merit to the contention of plaintiff trust beneficiaries that the
trustee violated his fiduciary duty to them by having the beneficiaries
sign subchapter S election forms resulting in a tax liability, where the
plaintiffs agreed to the plan. [296-297]

No basis for the removal of a trustee was demonstrated by the trustee's
actions unrelated to his position as trustee and where he did not violate
any duty to the trust beneficiaries. [297-298]

Trust beneficiaries were without standing to assert that the actions of an
officer-director of the trust asset, a close corporation, wasted the asset.
[298-299]

In a civil action, beneficiaries of a trust did not establish that they had an
attorney-client relationship with the defendant law firm so as to give
them standing to assert a claim for alleged malpractice in the defend-

---

[1] Janet Symmons Hollyday.

[2] Roderick M. Connelly, George E. Donovan, Joseph F. Ryan,
Edward P. McPartlin, Walter J. Connelly, Norman M. Goldberg,
Frances X. Hogan, Edward S. Rooney, Jr., Norman C. Sabbey, John P.
Carr, Kenneth A. Johnson, and Domenic P. Aiello.

ant's handling of the trust settlor's estate plan [299-300]; nor did the plaintiffs establish that they had standing as intended third-party beneficiaries of the legal work done by the defendant for the settlor [301].

In a civil action the judge correctly ruled on the ground of attorney-client privilege that the plaintiffs, trust beneficiaries, were not entitled to discovery of memoranda prepared by a law firm at the request of the trustee regarding trust business. [301-302]

The judge in a civil action did not abuse his discretion or err as a matter of law in denying plaintiff's motion for further deposition of a defendant, where that defendant had been deposed extensively for four and one-half days. [302]

At a civil trial, no abuse of discretion or error appeared in the judge's striking of certain evidence. [302-303]

Where an appeal was not frivolous, this court declined to impose sanctions on the appealing party. [303-304]

CIVIL ACTION commenced in the Superior Court Department on November 7, 1991.

The case was heard by *Patrick F. Brady*, J., on motions for summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

*Sydelle Pittas* (*Marc C. Laredo* with her) for the plaintiffs.

*Nonnie S. Burnes* (*Diane diIanni* with her) for William B. O'Keeffe.

*Edward J. Duggan* (*Domenic P. Aiello* with him) for Roderick M. Connelly & others.

ABRAMS, J. The plaintiffs, P. Vanessa Symmons and Janet Symmons Hollyday, appeal from the entry of summary judgment in favor of the defendants, William B. O'Keeffe (O'Keeffe) and his partners at the law firm of Lyne, Woodworth & Evarts (LWE). The plaintiffs sought "injunctive and other appropriate relief in order to right the wrongs done to the family of the founder of Symmons Industries, Inc., by William B. O'Keeffe, Esq.," and LWE. The amended verified complaint claimed that "[a] trusted attorney, instead of transferring the stock owned by the founder of a multi-million-dollar, closely-held corporation outright to his three

adult daughters as was the founder's intent, seized the opportunity to wrest control of the corporation from the founder and his daughters, and transfer it to himself."

Specifically, the plaintiffs allege that: (1) O'Keeffe should be removed as trustee of trusts established for their benefit, pursuant to G. L. c. 203, § 12 (1992 ed.), on the ground that he has failed to act in their best interests (count I); (2) O'Keeffe violated his fiduciary duties as trustee (count II); (3) O'Keeffe violated his fiduciary duties as majority shareholder of Symmons Industries (count III); (4) O'Keeffe wasted the corpus of trusts established for their benefit by diminishing the value of Symmons Industries stock held by the trusts (count IV); and (5) the defendant law firm partners were negligent in their legal representation of the plaintiffs' interests (counts V and VI). In a separate count, the plaintiffs requested equitable relief for the alleged wrongs (count VII). This count did not set forth a separate legal theory. Defendants O'Keeffe and LWE filed counterclaims for abuse of process. The judge allowed the defendants' motions for summary judgment on the plaintiffs' complaint and the plaintiffs' motion for summary judgment on O'Keeffe's abuse of process counterclaim. The partners of LWE thereafter dismissed their counterclaim for abuse of process. The plaintiffs appeal from the summary judgment entered for the defendants. The defendants seek sanctions because they claim the plaintiffs' appeal is frivolous. See G. L. c. 231 § 6F (1992 ed.); Mass. R. A. P. 25, as amended, 378 Mass. 925 (1979). We allowed LWE's application for direct appellate review. We affirm the judgment of the Superior Court. We deny the defendants' motions for double costs and reasonable attorney's fees.

1. *The facts.* The plaintiffs are two of the three daughters of Paul C. Symmons (Symmons). Symmons's third daughter, Paula O'Keeffe, married defendant William B. O'Keeffe, a partner at LWE, nearly thirty years ago.

In 1938, Symmons founded Symmons Industries, a plumbing manufacturing company, and created the Symmons Family Partnership, which holds title to the real estate on which

Symmons Industries is located. Over the years, Symmons In-
dustries became a very successful family business. At the
time this litigation was commenced, Symmons Industries'
board of directors consisted of O'Keeffe, Symmons,
P. Vanessa Symmons, Janet Symmons Hollyday, Paula
O'Keeffe, Albert G. Fehrm (president of Symmons Indus-
tries), and Kevin V. Symmons (Symmons's nephew and a
vice president of Symmons Industries). Prior to April 7,
1989, Symmons owned approximately sixty percent of the
outstanding shares of Symmons Industries common stock.
His three daughters each owned nine percent of the shares.

Defendant O'Keeffe is the chief executive officer (CEO)
and chairman of the board of Symmons Industries. In 1966,
Symmons hired O'Keeffe to do some legal work for Sym-
mons Industries. LWE then became legal counsel to Sym-
mons Industries, handling most of its legal work. In 1970,
O'Keeffe became clerk of Symmons Industries and in 1982
he was elected to its board of directors. In 1986 he became
CEO and in 1987 he became chairman of the board.

Attorney Kingsbury Browne of the law firm of Hill & Bar-
low prepared an estate plan for Symmons in 1974 and re-
vised it in 1978, 1981 and 1982. This plan, in all its revisions,
included a trust into which shares of stock of Symmons In-
dustries would be transferred for the benefit of Symmons's
three daughters. O'Keeffe was one of the trustees of this
trust from 1982 onward. The trust was to terminate five
years after Symmons's death.

In 1985, Symmons had LWE revise his estate plan. LWE
made changes required by tax law and removed Browne as
trustee of the trust (leaving O'Keeffe and an accountant for
Symmons Industries as the two cotrustees). The new plan ex-
tended the term of the trust from five to fifteen years. In
1988, Symmons again amended his estate plan, to make it
conform to the subchapter S tax status Symmons Industries

had elected.[3] O'Keeffe and the accountant remained the two trustees and the term of the trust remained fifteen years.

In 1989, Symmons contemplated marriage. His daughters became concerned about the potential impact of this marriage on their expected inheritances. O'Keeffe discussed these concerns with Symmons. At O'Keeffe's suggestion, Symmons decided to transfer his Symmons Industries stock into trusts for the benefit of his three daughters while he was alive. At a meeting at O'Keeffe's home during the afternoon of April 7, 1989, Symmons transferred his stock into three identical trusts for the benefit of his daughters. Symmons also set up an additional trust called the Symmons Family Trust. He transferred his thirty percent interest in the Symmons Family Partnership into this trust. The beneficiaries are Symmons's three daughters. Several lawyers from LWE were present at this meeting, as were the plaintiffs. The plaintiffs did not participate in the discussions. According to the evidence, Symmons was given a full explanation of the transactions by the LWE lawyers. Symmons was alert, asked questions and appeared knowledgeable about estate planning. As in the trust in his previous estate plan, O'Keeffe and the accountant were the trustees and the trusts were to continue for fifteen years after Symmons's death.

The trusts provide that if one trustee resigns, the other may serve alone, and that, if a further vacancy occurs, the beneficiaries may select successor trustees. Under the terms of the trusts, the trustees are required to distribute all net income to the beneficiaries. The amount of dividends paid to the trusts, and all other Symmons Industries shareholders, is determined by the company's board of directors.

---

[3]In brief, a closely held corporation can elect subchapter S status under the Federal tax laws in order to avoid double taxation on its earnings. Earnings of corporations that do not make this election are taxed at the corporate level when income is earned and at the shareholder level when it is distributed. A closely held corporation that elects subchapter S status is not taxed at the corporate level and its shareholders are not taxed on dividends. Instead, the shareholders are directly taxed on the corporate earnings. I.R.C. §§ 1361 et seq.

In the fall of 1989, the plaintiffs objected that the stock had not been transferred to them as an outright gift and asked O'Keeffe to resign as trustee. O'Keeffe declined to do so. In October, 1991, a dispute arose as to how to pay taxes due on the 1989 gifts. That dispute led to this litigation. The accountant-trustee resigned and O'Keeffe became sole trustee.

From the creation of the trusts until the filing of this lawsuit, the plaintiffs consistently voted to elect O'Keeffe as a director of Symmons Industries. They have never challenged the composition of the board of directors or made nominations for substitute members. As directors, the plaintiffs voted for O'Keeffe as chairman of the board in 1990 and 1991.

2. *Summary judgment.* The plaintiffs claim that the motion judge erred in allowing the defendants' motions for summary judgment. Summary judgment is appropriate when "there is no genuine issue as to any material fact and [ ] the moving party is entitled to a judgment as a matter of law." Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). See, e.g., *Theran* v. *Rokoff,* 413 Mass. 590, 591 (1992); *Massachusetts Bay Transp. Auth.* v. *Allianz Ins. Co.,* 413 Mass. 473, 476 (1992). "[The] party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he demonstrates . . . that the party opposing the motion has no reasonable expectation of proving an essential element of that party's case." *Wheatley* v. *American Tel. & Tel. Co.,* 418 Mass. 394, 397 (1994), quoting *Kourouvacilis* v. *General Motors Corp.,* 410 Mass. 706, 716 (1991). See *Judson* v. *Essex Agric. & Technical Inst.,* 418 Mass. 159, 162 (1994). The record, although voluminous, discloses no genuine issues of material fact. The judge correctly ordered that summary judgment be entered for the defendants.

A. *Removal.* The plaintiffs contend that there are genuine issues of material fact relevant to O'Keeffe's suitability to continue as trustee of the trusts and that there therefore was a triable issue of fact as to whether O'Keeffe should have

been removed as trustee under G. L. c. 203, § 12.[4] We now address each of the grounds set forth by the plaintiffs as basis for O'Keeffe's removal.

I. *Settlor's intent to create trusts.* The plaintiffs first contend that Symmons had no intention of creating the trusts, but rather, was "tricked" into doing so by the defendants. The plaintiffs did not assert a claim of fraud, duress, undue influence or mistake, nor did they have standing to do so. Such a claim would be properly brought by Symmons, who was alive at the time this suit was commenced, or by his representative. See *Robinson* v. *Gould*, 11 Cush. 55, 57 (1853) (duress); *Markell* v. *Sidney B. Pfeifer Found., Inc.*, 9 Mass. App. Ct. 412, 440-441 (1980) (mistake induced by fiduciary). The plaintiffs did not seek reformation or rescission of the trusts.[5] Instead, they argue that the fact that the defendants "tricked" Symmons into creating the trusts is a ground for O'Keeffe's removal as trustee under G. L. c. 203, § 12.

The plaintiffs argue that the judge incorrectly relied on the parol evidence rule in allowing the defendants' motions for summary judgment. They assert that because they did not seek to vary or contradict the terms of the trusts they can use extrinsic evidence to prove that O'Keeffe should be removed as trustee. See *Porreca* v. *Gaglione*, 358 Mass. 365, 368-369 (1970). The plaintiffs contend that affidavits on the issue of Symmons's intent should have been considered by the judge. They claim that Symmons's intent is a factual issue for the jury. See *Quincy Mut. Fire Ins. Co.* v. *Abernathy*, 393 Mass. 81, 86 (1984) ("[t]he granting of summary judgment in a case where . . . state of mind or motive constitutes an essential element of the cause of action is disfavored"). We agree

---

[4]General Laws c. 203, § 12 (1992 ed.), provides, in relevant part: "The supreme judicial court, the superior court or the probate court may, upon petition of a party beneficially interested in a trust under a written instrument, . . . remove the trustee if it finds that such removal is for the interests of the beneficiaries of the trust . . . ."

[5]We need not address the issue of whether the plaintiffs had standing to bring a claim for reformation or rescission, see, e.g., *Getty* v. *Getty*, 187 Cal. App. 3d 1159, 1180-1181 (1986), because they neither sought such relief nor raised the issue on appeal.

with the plaintiffs that the parol evidence rule should not
have barred consideration of their affidavits.

The flaw in the plaintiffs' argument is that the extrinsic
evidence on which they rely is hearsay.[6] See *Madsen* v. *Erwin*, 395 Mass. 715, 721 (1985) ("[h]earsay in an affidavit is
unacceptable to defeat summary judgment"); *Flesner* v.
*Technical Communications Corp.*, 410 Mass. 805, 817
(1991) ("testimony was hearsay and insufficient to survive a
motion for summary judgment"). The judge should not have
considered the affidavits submitted by the plaintiffs because
the statements as to intent contained inadmissible hearsay,
see *Ryan* v. *Ryan, ante* 86, 92 (1994) (strong clear evidence
needed to alter the terms of formal document), and did not
satisfy the plaintiffs' burden on the summary judgment motion. See *Kourouvacilis, supra* at 716.

II. *Hostility.* The plaintiffs argue that O'Keeffe should be
removed because he is hostile to them. A trustee can be removed on the basis of hostility toward the trust beneficiaries.
*Cooney* v. *Montana*, 347 Mass. 29, 38 (1964), quoting *Wilson* v. *Wilson*, 145 Mass. 490, 493 (1888) (can remove trustee when the existence of hostility "would naturally pervert
[the trustee's] feelings and judgment"). However, a trustee
need not be removed where, as here, "the hostile feeling does
not interfere with the proper administration of the trust."
*Shirk* v. *Walker*, 298 Mass. 251, 260 (1937). O'Keeffe has
carried out his duty to distribute all the trusts' net income to
the beneficiaries. O'Keeffe and the plaintiffs have voted the
shares they control the same way in all shareholder votes involving the election of the board of directors.

---

[6]After Symmons signed an affidavit in support of the plaintiffs, in the
presence of legal counsel of his own choosing, he signed so many other
statements that the plaintiffs concede that he "would sign anything placed
before him by someone he knew." The plaintiffs correctly did not assert
any error in the judge's conclusion that he should not consider the affidavits of Symmons. The hearsay in the other affidavits, which contain many
of the same comments as the Symmons's affidavit, could be relevant to the
issue of rescission, reformation, fraud, duress, undue influence or mistake.

The specific instances of hostility to which the plaintiffs refer arose from their institution of this suit. "[H]ostility . . . which results from the acts or conduct of the beneficiar[ies], has been held not to be sufficient ground for removal." *Schildberg* v. *Schildberg*, 461 N.W.2d 186, 192 (Iowa 1990). See *Akin* v. *Dahl*, 661 S.W.2d 911, 914 (Tex.), cert. denied, 466 U.S. 938 (1983) ("this Court will not sanction the creation of hostility by a beneficiary in order to effectuate the removal of a trustee"); *In Re Grave's Estate*, 110 N.Y.S.2d 763, 767 (Surr. Ct. 1952) ("the mere fact of friction between [trustees] and the beneficiaries is not sufficient cause for their removal. . . . If it were, an obstreperous malintentioned beneficiary could cause the removal of a competent trustee through no fault on the latter's part" [citations omitted]); 2 Scott, Trusts § 107, at 109-110 (4th ed. 1987) ("The mere fact that there is . . . friction or hostility [between the trustee and beneficiaries] is not necessarily a sufficient ground for removal, [because] otherwise the beneficiaries could by quarreling with the trustee force him out"). "It would be a poor rule indeed that would permit a beneficiary to remove a trustee for hostility it itself engendered by demanding the trustee's resignation." *IFS Indus., Inc.* v. *Stephens*, 159 Cal. App. 3d 740, 754 (1984). See *duPont* v. *Southern Nat'l Bank*, 771 F.2d 874, 885-886 (5th Cir. 1985), cert. denied, 475 U.S. 1089 (1986) (hostility created through settlor's attempt to invalidate trust is not ground for removal). The record does not support any claim of hostility toward the plaintiffs other than that resulting from this litigation.

III. *Excessive tax liability.* The plaintiffs argue that O'Keeffe's unfitness is demonstrated by the excessive tax liability to which they were exposed. The plaintiffs assert that O'Keeffe violated his fiduciary duty to them because he had them sign subchapter S election forms by which they, as beneficiaries of the trusts, "agreed to be taxed on their share of corporate income regardless whether they actually re-

ceived any part of the income in cash.'"[7] The plaintiffs argue that "the lack of contractual assurances that they will receive at least sufficient cash distributions from Symmons Industries to satisfy their tax exposure is unconscionable." The plaintiffs agreed to the plan. Further, there was no evidence in the record that Symmons Industries has failed, or would fail, to distribute sufficient dividends to enable the plaintiffs to pay the taxes.

Next, the plaintiffs point to the defendant law firm's allegedly negligent gift tax planning in connection with the gifts of stock to the trusts as evidence that O'Keeffe is unsuitable to continue as trustee.[8] The motion judge noted: (1) "if there was negligent tax planning which resulted in higher gift taxes, the only [ ] person who has a claim for that would be Mr. Symmons, the person who had to pay the taxes and the only person to whom the defendants owed a duty"; and (2) "the plaintiffs acquiesced in the plan."

The plaintiffs argue that O'Keeffe, in resolving a tax problem, violated his duty to them by favoring a loan scheme to cover the taxes, rather than simply distributing sufficient funds to pay them. This determination by O'Keeffe is not relevant to the issue of O'Keeffe's suitability as a trustee. The plaintiffs voluntarily received the loans and reloaned the money to their father. The trusts were not involved. While O'Keeffe helped devise and implement this scheme, he did this in his capacity as an officer of Symmons Industries, not as trustee. Because O'Keeffe's actions regarding this loan scheme were unrelated to his position as trustee, and because he did not violate a duty to the beneficiaries of the trusts,

---

[7]All shareholders must consent to a subchapter S election. I.R.C. § 1362(a)(2).

[8]The plaintiffs do not raise a direct claim of negligent tax planning. Their statement that they also seek redress through their malpractice claims, without more, does not rise to the level of acceptable appellate argument under Mass. R. A. P. 16 (a) (4), as amended, 376 Mass. 921 (1975). Further, such a claim would fail because, as discussed below, the plaintiffs were not the clients of LWE or O'Keeffe. Thus, we address the issue whether this allegedly negligent tax planning provides ground for the removal of O'Keeffe as trustee.

these actions provide no basis to order O'Keeffe's removal as trustee.

IV. *Symmons Industries' claims.* The plaintiffs next allege that O'Keeffe is not competent to run Symmons Industries and that he wasted trust assets by diminishing the value of Symmons Industries stock through an executive compensation plan. O'Keeffe's actions in these matters were as a corporate officer and director, not a trustee.[9] These claims, if meritorious, therefore belong to the corporation, not the plaintiffs.[10] The plaintiffs can only assert them in a share-

---

[9]O'Keeffe's different and potentially conflicting duties arising from his different positions (i.e., his duty as trustee to act in the interests of the beneficiaries and his duty as a corporate officer and director to act in the interests of the corporation) do not create grounds for his removal. In acting in his corporate role, O'Keeffe may sometimes have to subordinate the interests of the trust beneficiaries to those of the corporation. The settlor of the trusts, Symmons, knew, at the time he created the trusts, that' O'Keeffe held and would hold these various positions. The plaintiffs cannot obtain relief on these facts. See Restatement (Second) of Trusts § 107 clause a, comment f (1957) ("The court will not ordinarily remove a trustee named by the settlor upon a ground existing at the time of his appointment and known to the settlor and in spite of which the settlor appointed him . . ."). See also 2 Scott, Trusts § 107.1, at 118.

[10]Similarly, the right to inspect Symmons Industries' legal bills belongs to Symmons Industries, not the plaintiffs. During discovery, the plaintiffs requested that LWE produce all documents relating to fees charged to Symmons Industries. LWE produced bills and time records, but in a redacted form. In response to the plaintiffs' motion to compel production of unredacted documents, LWE asserted the attorney-client privilege. The motion judge denied the motion.

LWE properly invoked the attorney-client privilege on behalf of their client, Symmons Industries. The plaintiffs' position as directors did not entitle them to waive this privilege. See, e.g., *Loring v. United States*, 80 F. Supp. 781, 786 (D. Mass. 1948) ("an individual director apart from the board . . . has no power to act for the corporation"). The plaintiffs argue that they have a right to inspect these records by virtue of their being stockholders of Symmons Industries. They assert that stockholders have the right to examine materials regarding communications between a corporation and its counsel when there is good cause to do so, even though these materials would otherwise be protected by the attorney-client privilege. In support of this position they cite *Garner v. Wolfinbarger*, 430 F.2d 1093, 1101-1104 (5th Cir. 1970), cert. denied, 401 U.S. 974 (1971). In that case, the United States Court of Appeals for the Fifth Circuit held that while "[a] corporation is not barred from asserting [attorney-client privilege] merely because those demanding information enjoy the status of

holders' derivative suit. See *Schaeffer* v. *Cohen, Rosenthal, Price, Mirkin, Jennings and Berg, P.C.,* 405 Mass. 506 (1989); *Robertson* v. *Gaston Snow & Ely Bartlett,* 404 Mass. 515, cert. denied, 493 U.S. 894 (1989); *Bessette* v. *Bessette,* 385 Mass. 806, 809-810 (1982); *Hirshberg* v. *Appel,* 266 Mass. 98, 100 (1929). See also *Perry* v. *Perry,* 339 Mass. 470, 480 (1959) ("[r]ecognizing that a beneficiary of a trust of shares in a family corporation may in appropriate proceedings force an examination of the corporate affairs, and also the equivalent of a stockholders' suit").

B. *Attorney-client relationship or similar duty by LWE.* The plaintiffs contend that whether there was an attorney-client relationship between them and the defendant law firm regarding the April 7, 1989, transaction is a material fact in dispute which should have been submitted to a jury. They argue that such a relationship gives them standing to assert a claim against the defendants for their alleged malpractice in handling Symmons's estate plan.

To support the existence of·an attorney-client relationship, the plaintiffs point to the defendant law firm's ongoing representation of them on various matters for twenty years, continuing through and after the creation of the trusts. They argue that, based on this past legal advice, together with their testimony that O'Keeffe volunteered the problem of their father's possible marriage and the solution of an outright gift of the stock to them, a finder of fact reasonably could have determined that O'Keeffe knew, and his partners should have known, that the plaintiffs were relying on them to effectuate the transfers of stock on their, as well as their father's, behalf. Thus, they argue, there was an attorney-client relation-

---

stockholders," where a corporation "is in suit against its stockholders on charges of acting inimically to stockholder interests, protection of those interests as well as those of the corporation and of the public require that the availability of the privilege be subject to the right of the stockholders to show why it should not be invoked in the particular instance." *Id.* at 1103-1104. *Garner* is a derivative suit. The plaintiffs did not bring a derivative suit to enforce a right of the corporation. See Mass. R. Civ. P. 23.1, 365 Mass. 784 (1974).

ship between the plaintiffs and the defendants at the time the trusts were established.

In order to give the plaintiffs standing to challenge the creation of the trusts, an attorney-client relationship must be a relationship with respect to those trusts. See *Page* v. *Frazier*, 388 Mass. 55, 62 n.10 (1983), quoting *Kurtenbach* v. *TeKippe*, 260 N.W.2d 53, 56 (Iowa 1977) ("In a legal malpractice action it is not sufficient merely to prove an attorney-client relationship existed with respect to some matters. It is necessary to establish that the relationship existed with respect to the act or omission upon which the malpractice claim is based"). No one asked LWE to represent the plaintiffs in connection with the trusts or Symmons's estate plan; no fee agreement was discussed, no retainer was paid, and no bill was sent to either plaintiff for services related to the estate plan or execution of the trusts. The record does not support a conclusion that there was an attorney-client relationship between the plaintiffs and the defendants as to the trusts. See *Robertson* v. *Gaston Snow & Ely Bartlett, supra* at 526 ("because the plaintiff never requested [the attorneys] to represent him in this matter, never was told that [they] would protect his interests, and was never billed for any services there was little basis to imply the existence of an attorney-client relationship").[11]

Further, LWE's duty of loyalty dictates that it could not have owed a duty to the plaintiffs. In preparing an estate plan and distributing property, either through a will or through inter vivos trusts, attorneys can have only one client to whom they owe a duty of undivided loyalty. See *Logotheti* v. *Gordon*, 414 Mass. 308, 311-312 (1993). Symmons was LWE's only client on the matter of his estate plan. We will not impose a duty on the defendants to any other party with respect to this plan. See *id.* Thus, the defendants could not have owed a duty to the plaintiffs.

[11]The lack of an attorney-client relationship also is evidenced by letters O'Keeffe wrote the plaintiffs on May 1, 1989, suggesting that their own estate plans might be affected and that they should therefore consult their own estate planning attorneys about the changed circumstances.

The plaintiffs also argue that they have standing as intended third-party beneficiaries of the work done by LWE for their father. They argue that Symmons hired LWE to effectuate his intent to make an outright gift of the stock to his daughters, thereby making them the intended third-party beneficiaries of the work. Symmons's estate plans from 1974 forward put his Symmons Industries stock in trust for the benefit of his daughters. At no time did Symmons's estate plan give the stock to them as an outright gift. There was no admissible evidence to support the plaintiffs' claim that Symmons intended to make an outright gift of the stock to his daughters.

3. *Interlocutory orders.* On appeal, the plaintiffs also claim error in certain interlocutory orders on discovery and the admissibility of evidence.

A. *Certain legal memoranda.* In 1989, an LWE associate researched questions regarding O'Keeffe's role as trustee and the possible appointment of cotrustees, and prepared two memoranda on this topic. This work was billed to Symmons Industries.[12] LWE refused the plaintiffs' discovery request to produce these memoranda on the grounds that O'Keeffe was the client for whom they were prepared and the documents were therefore protected by the attorney-client privilege. The judge agreed and denied the plaintiffs' motion to compel production. The plaintiffs argue that O'Keeffe should not be able to invoke the attorney-client privilege against the beneficiaries on matters concerning the trusts. We disagree.

O'Keeffe sought legal advice due to his concern over possible conflicts with the plaintiffs. On this matter, LWE's client was O'Keeffe. See *Spinner* v. *Nutt*, 417 Mass. 549, 553-554 (1994). As the client, O'Keeffe could properly invoke the attorney-client privilege to preclude the discovery of these memoranda. See *id.* (refusing to impose duty on trustee's attorney to beneficiaries of the trust); 2A Scott, Trusts, *supra* ·§ 173 at 465 ("where there is a conflict of interest between

---

[12]Whether this legal service was appropriately billed to Symmons Industries is for the corporation, not these plaintiffs.

the trustee and the beneficiaries and the trustee procures an opinion of counsel for his own protection, the beneficiaries are not entitled to inspect the opinion").

B. *Denial of further deposition.* The plaintiffs next argue that the motion judge erred in denying their motion to compel the further deposition of O'Keeffe. The plaintiffs must show that the denial constituted an abuse of discretion which resulted in prejudicial error. *Solimene* v. *B. Grauel & Co., KG,* 399 Mass. 790, 799 (1987). *Bishop* v. *Klein,* 380 Mass. 285, 288 (1980). The plaintiffs' counsel deposed O'Keeffe extensively for a period of four and one-half days. The plaintiffs do not offer any basis for a conclusion that the judge abused his discretion or erred as a matter of law.

C. *Evidentiary rulings.* Finally, the plaintiffs challenge the judge's striking of certain evidence. Specifically, they object to the striking of an affidavit by Ms. Badeau, Symmons's housekeeper and companion, and of evidence they submitted in support of their motion for reconsideration including a letter from Symmons's physician, Symmons's deposition testimony from an unrelated proceeding, and new affidavits by the plaintiffs. The letter from Symmons's physician, which indicated that Symmons suffered from early dementia in March of 1989, was not relevant to the issues raised by the plaintiffs. At best, the letter was relevant to the issue of rescission, a claim which the plaintiffs expressly disavowed. The other evidence was relevant to two issues, Symmons's intent and whether there was an attorney-client relationship between the plaintiffs and LWE in regard to the creation of the trusts. With respect to Symmons's intent, the evidence was properly excluded because it was hearsay or went to issues other than the removal of O'Keeffe. See *supra* at 295. With respect to the attorney-client relationship, the evidence was properly excluded because, due to LWE's duty of undivided loyalty to Symmons, there could be no such relationship. See *supra* at 300. Thus, the motion judge did not abuse his discretion in excluding this evidence. See *Commonwealth* v. *Tobin,* 392 Mass. 604, 613 (1984) (judge accorded broad discretion "in deciding whether evidence is relevant,

and whether the prejudicial implications of such evidence outweigh its probative value").[13]

4. *Sanctions*. The defendants request that double costs and attorney's fees be imposed on the plaintiffs and their counsel, pursuant to Mass. R. A. P. 25, as amended, 378 Mass. 925 (1979).[14] The rule permits such sanctions when a party presses a frivolous appeal.[15] An appeal is frivolous "[w]hen the law is well settled [and] when there can be no reasonable expectation of a reversal." *Avery* v. *Steele*, 414 Mass. 450, 455 (1993). We are hesitant to deem an appeal frivolous and grant sanctions except in egregious cases. See *Avery*, *supra* at 456, 461; *Burger Chef Sys., Inc.* v. *Servfast of Brockton, Inc.*, 393 Mass. 287, 292 (1984).

The appeal was not frivolous. The plaintiffs' arguments that O'Keeffe should be removed due to his conflicts of interest,[16] the alleged "subversion" of Symmons's intent, and O'Keeffe's hostility were sufficiently meritorious to defeat O'Keeffe's claim for sanctions. See *Avery*, *supra* at 455

---

[13]The plaintiffs assert two additional discovery issues on appeal: (1) that communications among LWE partners were erroneously shielded from discovery under the attorney work product doctrine or the attorney-client privilege and; (2) that LWE was erroneously permitted to produce redacted memoranda in order to conceal information therein. We need not address these issues because, even if the motion judge erred in these discovery matters, the error was nonprejudicial. We do not reverse a case for a failure of discovery unless "the error complained of has injuriously affected the substantial rights of the parties." G. L. c. 231, § 119. Based on the record before us, additional discovery could not have created a material issue of fact sufficient to defeat the allowance of the defendants' motions for summary judgment. Thus, even if there were error, it did not injuriously affect the plaintiffs' substantial rights.

[14]Defendant O'Keeffe requests such sanctions against both the plaintiffs and their attorneys. The other LWE partners request such sanctions be imposed only on the plaintiffs' attorneys. Such sanctions can be imposed on either the appellants or their attorneys. *Avery* v. *Steele*, 414 Mass. 450, 455 (1993).

[15]Rule 25 provides: "If the appellate court shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee, and such interest on the amount of the judgment as may be allowed by law."

[16]O'Keeffe himself had LWE to research his conflicts of interest issues. See *supra* at 301-302.

("[u]npersuasive arguments do not necessarily render an appeal frivolous"); *Allen* v. *Batchelder*, 17 Mass. App. Ct. 453, 458 (1984) (court will not deem an appeal to be "frivolous because it presents an argument that is novel, unusual or ingenious, or urges adoption of a new principle of law or revision of an old one"). The plaintiffs' claim that, in light of their dealings with both LWE and O'Keeffe, which were contemporaneous with LWE's representation of Symmons in the matter of his estate plan, LWE owed them fiduciary duties also merited appellate review. We therefore reject LWE's argument that the appeal against them was frivolous. We also reject LWE's argument that the appeal was pursued for an improper purpose. This was the basis for LWE's abuse of process counterclaim which LWE voluntarily dismissed.

Finally, we reject the defendants' contention that sanctions are appropriate because the plaintiffs' arguments were not sufficiently supported by record references and citations to authority and therefore did not rise to the level of appropriate appellate argument. See, e.g., *Medi-Cab of Mass. Bay, Inc.* v. *Rate Setting Comm'n*, 401 Mass. 357, 369 (1987) (appellate argument unacceptable due to failure to cite "statute, regulation," or case authority"); *Service Publications, Inc.* v. *Goverman*, 396 Mass. 567, 580 (1986) (disregarding portions of brief that are "argumentative in nature and were not substantiated by the record"). We have held that "[i]nappropriate argument and unsubstantiated statements in a brief may infect an otherwise meritorious appeal so pervasively as to make it frivolous." *Avery, supra* at 456. The plaintiffs' citations to authority and the record were more than adequate.[17]

We conclude that the Superior Court judge did not err in allowing the defendants' motions for summary judgment and

---

[17]In response to the defendants' motions for sanctions, the plaintiffs requested that they be awarded their costs and fees incurred in opposing the defendants' sanction motions. We deny the plaintiffs' request for costs and fees. The fact that sanctions were requested and denied does not automatically entitle the opposing party to costs and fees.

that sanctions are not warranted. We affirm the judgment of the Superior Court and deny the requests for sanctions.

*Judgment affirmed.*