Bohn, J.
Plaintiff Albert Cook (“Mr. Cook”) filed this pro se action in June 1994 alleging unfair or deceptive trade practices in violation of G.L.c. 93A, slander, invasion of privacy, and assault. These allegations arise out of an investigative report concerning Mr. Cook’s business dealings by defendant Hank Phillippi Ryan (“Ms. Ryan”) and broadcast on defendant WHDH-TV’s television station, Channel 7 in Boston (“Channel 7”). Defendants have moved for summary judgment. This Court held a hearing on defendants’ motion on February 5, 1998. For the following reasons, defendants’ motion is allowed in part, and denied in part.
BACKGROUND[1]
The investigative report that forms the basis for this action was reported by Ms. Ryan and called “The Real Deal.” The report was aired over 11 minutes on two nights, November 15 and 16, 1993. Channel 7 also aired advertisements promoting the upcoming segment on the evening news.
The Broadcast
The November 15, 1993 segment is introduced by the news anchor saying, “A trail of lies, lawsuits and broken promises. A dozen business deals gone bad in a big way.” During the segment, Ms. Ryan provided a narrative over footage which intersplices scenes from an attempted interview of Mr. Cook in a Burger King parking lot with an interview with Connie Cavallini, a former owner of Cobb & Drew; and, with Stan Tozlowski, a former owner of Virgo. Both Cobb & Drew and Virgo were manufacturing companies that Mr. Cook bought via his business ventures. The segment described a pattern of behavior by Cook, or companies with which he is associated, as buying business which were close to failure, then laying off employees, ignoring creditors, liquidating equipment and abandoning property.
The second segment of “The Real Deal” aired on November 16, 1993 and was introduced by the news anchor saying, “Bouncing paychecks, vanishing retirement money, cancelled insurance policies.” The anchor then recapped the previous evening’s stoiy and asserted that “[h]undreds of other victims are now outraged and demanding money.” The segment included interviews with employees of companies bought by Cook’s company complaining that their checks would routinely be returned for insufficient funds on payday and that 401(k) deductions continued to be taken out of their paychecks, but that the deductions “disappeared.” In addition to employees, Ms. Ryan interviewed the landlord to the former Virgo Manufacturing plant, who stated that he had been paid nothing. Ms. Ryan then began listing creditors of Cook companies, stating that they found “lawsuit after lawsuit against Cook companies. Businesses demanding money. Hundreds of thousands of dollars in claims and judgments.” Also detailed were outstanding bills to the Kingston Water Commissioner and the Kingston Tax Assessor. Ms. Ryan closed “The Real Deal” by stating that “Albert Cook used to be a lawyer, but in the early ‘80s he was disbarred and sentenced to prison after being convicted of 22 counts of larceny and embezzlement. It was after that he began buying failing businesses.”
The Investigation
In her affidavit filed in support of her motion for summary judgment, Ms. Ryan stated that with the assistance of the segment’s producer and an intern, she spent more than 640 hours doing research, interviewed over thirty people and reviewed over 4,000 pages of documents for the report. Ms. Ryan’s interest in the story of Albert Cook’s business dealings began when she received a telephone call from Myrtle Johnson, a former employee of Cobb & Drew. Ms. Johnson alleged that while she worked for Cobb & Drew, suppliers, vendors and other creditors were not paid, payroll checks were returned for insufficient funds, health insurance deductions were being withheld from employees’ checks despite the fact that the insurance plan had been cancelled, and payments to employee’s pension plans were not made. Ms. Johnson put Ms. Ryan in contact with Connie Cavallini. Ms. Ryan stated in her affidavit that both women provided her with documentation to support their allegations. Ms. Johnson also put Ms. Ryan in contact with Stanley *390 Tozlowski, who also provided Ms. Ryan with documentation from Virgo.
Ms. Ryan or her assistants also performed research on Mr. Cook and his companies in such public records as the Massachusetts Secretary of State’s records, Massachusetts and Connecticut court documents from law suits filed against Mr. Cook and his companies, and in city and town government records where Cook companies were located, including the Kingston Tax Assessor and the Kingston Water Commissioner.[2] Ms. Ryan also spoke to employees of the United States Department of Labor and Social Security Administration and the Connecticut Department of Labor regarding the retirement deductions and the returned paychecks. Ms. Ryan does not state in her affidavit whether the federal and state government employees confirmed allegations or not.
As part of her investigation, Ms. Ryan did attempt to get Mr. Cook’s reaction to the allegations when, in October 1993, she confronted Mr. Cook on camera. In part two of “the Real Deal,” Ms. Ryan stated twice that Mr. Cook pushed the camera away when she attempted to interview him. What is not entirely evident from the tape is that Mr. Cook was in line at a Burger King drive-through at 6:30 a.m. when he was confronted by Ms. Ryan and the Channel 7 camera. Mr. Cook was driving his son to school and stopping on the way for breakfast. Mr. Cook refused several times to speak with Ms. Ryan, but he was, at least temporarily, unable to extricate himself from the camera’s gaze and from Ms. Ryan’s questions. The footage included in the broadcast reveals Ms. Ryan and the camera man leaning nearly into the car window, questioning Mr. Cook while holding a microphone near his face.[3]
Also occurring during the Burger King interview was the statement by Ms. Ryan that forms the basis of Mr. Cook’s slander claim against her. Although it did not appear on the video tape, Mr. Cook alleges that Ms. Ryan made a comment to the effect of “I call that stealing.” The comment was apparently made in reference to the money Mr. Cook is alleged to owe Connie Cavallini and Stanley Tozlowski. Mr. Cook has alleged that the statement was overheard by his son and by Burger King employees.
Following the interview at Burger King, Ms. Ryan made some attempt to conduct a more formal interview with Mr. Cook. Ms. Ryan states in her affidavit that, while at Burger King, Mr. Cook agreed to an interview and asked for her telephone number to arrange it. Telephone calls and letters were exchanged but, Ms. Ryan claims, after she refused to provide Mr. Cook with a list of written questions, she did not hear from him until this lawsuit commenced.
DISCUSSION
This Court grants summary judgment when “there is no genuine issue as to any material fact and .. . the moving parly is entitled to-judgment as a matter of law.” Mass.RCiv.R 56(c); Symmons v. O’Keeffe, 419 Mass. 288, 292 (1995). “[The] parly moving for summary judgment in a case in which the opposing parly will have the burden of proof at trial is entitled to summary judgment if he demonstrates . . . that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case.” Id., quoting Wheatley v. American Tel & Tel. Co., 418 Mass. 394, 397 (1994). See also Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991) (movingparty’s “burden need not be met by affirmative evidence negating an essential element of the plaintiffs case, but may be satisfied by demonstrating that proof of the element is unlikely to be forthcoming at trial”).
The counts that remain in plaintiffs Complaint are violation of G.L.c. 93A, slander, invasion of privacy and assault.[4]
1. Violation of G.L.c. 93A
Mr. Cook has alleged that the defendants’ conduct during the course of the investigation, and the inaccurate portrayal of him in the broadcast constituted unfair or deceptive trade practices in violation of G.L.c. 93A. Chapter 93A, §2 declares unlawful ”[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce!.]” Section 11 of chapter 93A provides a right of action for
[a]ny person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice declared unlawful by Section 2[.]
G.L.c. 93A, §11.
Mr. Cook's primary assertion of an unfair trade practice is that the broadcast did not present the “whole truth" and was therefore, a deceptive and unfair act. Mr. Cook charges that the defendants controlled the content and the presentation of information and thereby created a false impression in the minds of the viewers and that the report did not express things “exactly as they were." Defendants argue that Mr. Cook cannot prove the defamation claim which underlies his chapter 93A claim.
Defamatory statements are actionable under chapter 93A. A.F.M. Corp. v. Corporate Aircraft Management, 626 F.Sup. 1533, 1551 (D.Mass. 1991); however, defamatory broadcasts do not, in and of themselves, constitute an unfair or deceptive trade practice. Furthermore, as a threshold matter, Mr. Cook has not shown that there is any trade or commerce relationship between himself and the defendants which would entitle him to relief under chapter 93A. Therefore, Mr. Cook’s chapter 93A claim must fail.[5]
2. Slander
Mr. Cook’s slander claim is based solely on the comment made by Ms. Ryan in the Burger King parking lot to the effect of, “I call that stealing.” Ms. Ryan was apparently referring to the allegation that Cook’s *391 companies failed to honor their obligations to the sellers of the companies that they acquired.
Slander consists of the publication of defamatory matter by spoken words, transitory gestures or by any other form of communication which is not the defamatory material in printed or written form. Restatement (Second) Torts §568 (1977). To be defamatory the statement must hold up the plaintiff to ridicule, scorn or contempt in a considerable and respectable class of the community, and must not be privileged. Muchnick v. Post Publishing Co., 332 Mass. 304, 306 (1955). The plaintiff in a slander action must also prove actual damages. Stone v. Essex County Newspapers, Inc., 367 Mass 849, 860 (1975) (“Damages in a defamation case are limited to actual damages, which are compensatory for the wrong that has been done”). Actual injury includes not only out-of-pocket expenses, but also harm inflicted by impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering. Id. at 861.
Assuming for the purposes of this motion that Ms. Ryan’s statement was defamatory and that the Burger King employees who overheard the statement were a “considerable and respectable class of the community,” she nevertheless cannot be held liable for slander because the statement was privileged as an expression of opinion. To determine whether a statement is an expression of opinion,
[t]he court must examine the statement in its totality in the context in which it was uttered or published. The court must consider all the words used, not merely a particular phrase or sentence. In addition, the court must give weight to cautionary terms used by the person publishing the statement. Finally, the court must consider all of the circumstances surrounding the statement, including the medium by which the statement is disseminated and the audience to which it is published.
Lyons v. Globe Newspaper Co., 415 Mass. 258, 263 (1993) (quoting Fleming v. Benzaquin, 390 Mass. 175, 180-81 (1983)).
Here, Ms. Ryan’s statement, “I call that stealing,” was made in the context of asking Mr. Cook to answer allegations that he had not paid money allegedly due. Prior to making that remark, Ms. Ryan had questioned Mr. Cook about various people who alleged that he owed them money. She was attempting to get a reaction from Mr. Cook. Her statement, “I call that stealing” implied the question to Mr. Cook, “What do you call it?” Clearly, Ms. Ryan was expressing that it was her opinion that Mr. Cook’s acts amounted to stealing. Because Ms. Ryan’s statement was a privileged expression of opinion, Mr. Cook’s slander claim cannot survive summary judgment.[6]
3. Invasion of Privacy
Mr. Cook has alleged that defendants violated his right to privacy pursuant to G.L.c. 214, §1B. That statute provides that, “[a] person shall have a right against unreasonable, substantial or serious interference with his privacy!.]” In a claim under this statute, a plaintiff must show that the defendants’ conduct was unreasonable or unjustified and that the conduct amounted to a serious or substantial interference with his privacy. Schlesinger v. Merrill Lynch Pierce, Fenner & Smith, Inc., 409 Mass. 514, 517-18 (1991); O’Connor v. Police Commissioner of Boston, 408 Mass. 324, 330 (1990) (held that the language of the statute requires the invasion of privacy be both unreasonable and substantial or serious: “We think that it is highly unlikely that the Legislature intended to provide a right of action to a person whose privacy was substantially or seriously interfered with, but reasonably so”). The Supreme Judicial Court has not yet defined the boundaries of the statutory terms; however, it has said that in determining whether there is a violation of § 1B, it is necessary to balance privacy interests with the interest served by the disclosure. Bratt v. International Business Machines Corp., 392 Mass. 508, 521 (1984).
Mr. Cook’s invasion of privacy claim, arising out of the confrontation at Burger King, is most akin to the common law tort of “intrusion on seclusion,”[7] or the violation of the “right to be let alone,”[8] although Mr. Cook has phrased some of his allegations as invasion of privacy by false light.[9]
Causes of action for intrusions on one’s right to privacy, or “intrusion on seclusion” are ordinarily foreclosed when the invasion occurs in a public place. This is so because the plaintiff is said to have voluntarily assumed the risk of being observed by being in a public place. Accordingly, defendants argue that Mr. Cook had no legitimate expectation of privacy in his car, with his son, at 6:30 a.m. in a Burger King parking lot and therefore liability cannot be imposed.
Most cases decided under G.L.c. 214, §1B concern the public disclosure of private facts and the Supreme Judicial Court has not had occasion to decide whether “intrusion on seclusion” is actionable under G.L.c. 214, §1B. Mr. Cook should be allowed to go forward, however, because, in accordance with the balancing test set forth in Bratt, he has presented a disputed issue of fact as to whether the interest served by the intrusion of the defendants is outweighed by his interest in his privacy. Specifically, Mr. Cook is entitled to have a jury consider such factors as the defendant’s motive for the intrusion; the extent or invasiveness of the intrusion; whether the plaintiff had a reasonable expectation of being free from such an intrusion; and whether the plaintiff consented.[10] An additional factor a jury may want to consider is the importance to the public of the information gained by the intrusion. Here, while the information disclosed by the television news story may have been of some importance to the public, the confrontation of the plaintiff at Burger King and the information gained therein was of negligible value to the story. A jury could well conclude that the design of the defendants was to *392 make Mr. Cook look guilty and add to the sensationalism of the story. Accordingly, this Court finds that the rigid application of invasion of privacy tort law to invasions occurring in public places ought not deprive Mr. Cook of the judgment of a jury of his peers as to whether defendants unreasonably and substantially or seriously invaded his privacy. G.L.c. 214, §1B.
4. Assault
Mr, Cook has alleged that the behavior of Ms. Ryan and her camera man in the Burger King parking lot constituted an assault.
The tort of assault in Massachusetts consists of the intentional creation of an apprehension of immediate physical harm by means of an overt gesture. An assault may be committed in either of two ways: it is either an attempted battery or an immediately threatened battery. That is, either an attempt to use some force or a demonstration of an apparent intent to use immediate force on another, which causes the victim to have a reasonable apprehension of immediate physical harm. See generally Restatement (Second) Torts, §§21-34. There is no liability for the negligent creation of an apprehension of harm. The intent required is the intent to make the victim apprehensive of immediate physical harm. Id. at §28. A plaintiff who is able to prove assault is entitled to recover as an element of damages for the humiliation, indignity and injury to his feelings, but his damages are limited to the proximate result of the physical assault. Ross v. Michael, 246 Mass. 126, 129 (1923).
In the present case, the defendants argue that there is no evidence that Ms. Ryan had any other intent than to conduct an interview of Mr. Cook and that she cannot be held liable for the negligent creation of apprehension of harm. Defendants further argue that Mr. Cook is unable to show that he had a reasonable apprehension of harm.
A jury could infer from the style of interviewing tactics employed that Ms. Ryan intended to create a startled, defensive reaction by Mr. Cook, which would tend to make him look guilty and quite possibly make for better drama on television news. Also, Mr. Cook testified at his deposition that he quickly recognized the camera as a camera, but he did spend some period of time where he felt threatened by the approach and confrontation by Ms. Ryan and her camera man. This Court finds, however, that Mr. Cook has not presented sufficient facts to show that he reasonably apprehended physical harm by Ms. Ryan. Accordingly, defendants’ motion as to Mr. Cook’s claim of assault must be allowed.
ORDER
For the foregoing reasons, defendants WHDH-TV, Inc.’s and Hank Phillippi Ryan’s Motion for Summary Judgment is allowed as to plaintiffs G.L.c. 93A, slander, and assault claims, and denied as to plaintiffs invasion of privacy claim.

The following facts are undisputed.

Mr. Cook, along with his sons, were involved in the following companies: Barlow Manufacturing, Inc., which purchased all of the outstanding shares of Products Design & Manufacturing Corp., Rofor Machine, Inc., Cobb & Drew, Inc., and Virgo, Inc.; PDM Acquisitions, Inc., which purchased all of the outstanding shares of Landis Manufacturing Systems, Inc.; Barlow Communications, Inc., which purchased all of the outstanding shares of Alden Press, Inc., and Mullen Printing, Inc.; TWL Holding, Inc., which purchased all of the outstanding shares of TWL Industries, Inc. Products Design & Manufacturing Corp. in turn purchased all of the outstanding shares of Atwood Machine, Inc., One Stop Industries, Inc., and Lane Manufacturing, Inc., and all of the assets of Kenmar Manufacturing Co., Inc.

Ms. Ryan’s questions included asking Mr. Cook: “What would he say to the people at Cobb & Drew, Products Design, Atwood Screw and other companies who were still waiting for the money they had been promised? Did he think he had done anything wrong in regard to the companies he had acquired? Why had he not paid the sellers of those companies the amount promised? Did he deny that he owed money to Connie Cavallini, Stan Tozlowski, Bob Reynolds and other sellers? What did he have to say about the 401 (k) deductions withheld from the paychecks of Products Design employees? What about the court judgments against him?” Ryan aff. para. 27.

Plaintiffs Complaint initially contained the additional counts of stalking, conversion and class action. On December 9, 1994, a Justice of the Superior Court allowed defendants’ motion to dismiss for failure to state a claim. Plaintiffs original Complaint also contained assault and invasion of privacy claims on behalf of the plaintiffs minor son. Those claims were dismissed for failure to respond to discovery.

Mr. Cook also alleged that Ms. Ryan and WHDH-TV engaged in unfair and deceptive trade practices when Ms. Ryan investigated the allegations against him without being licensed as a private investigator as required by G.L.c. 147, §23. Where relevant, Section 23 states: “No person shall engage in, advertise or hold himself out as being engaged in, nor solicit private detective business, unless licensed for such purpose as provided in Section twenty-five.” G.L.c. 147, §23. Although this Court doubts that this statute was intended to apply to journalists or investigative reporters, a violation of this sort is not actionable under chapter 93A.

As an additional matter, this Court doubts whether Mr. Cook would be able to prove actual damages as a result of the allegedly defamatory statement.

Section 652B of the Restatement (Second) ofTorts defines “Intrusion upon Seclusion” as: “[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.”

The privacy right, phrased as “the right to be let alone” was discussed by Samuel D. Warren and Louis D. Brandéis in The Right to Privacy, 4 Harv. L. Rev. 193, 195 (1890). This article is credited by many as conceiving of the idea of a tort remedy for invasions of privacy. See e.g., Andrew Jay McClurg, Bringing Privacy Law Out of the Closet A Tort Theory of Liability for Intrusions in Public Places, 73 N.C.L.Rev. 989, 997 n.33 (1995).

Although well recognized elsewhere, false light has not as of yet been recognized as a cause of action in Massachusetts. E.L.M. Medical Laboratory, Inc. v. RKO General, Inc., 403 Mass. 779, 787 (1989); Yovino v. Fish, 27 Mass.App.Ct. 442, 450 (1989): cf. Restatement (Second) ofTorts §652E. Therefore, Mr. Cook’s claim of invasion of privacy by casting in a false light must fail as a matter of law.

These and other factors were proposed by Andrew Jay McClurg in Bringing Privacy Law Out of the Closet, supra at 1058-59.